IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.                     Civil Action
                         No. 1:21-cv-3234
ALL PETROLEUM-PRODUCT CARGO
ONBOARD THE M/T ARINA WITH
INTERNATIONAL MARITIME
ORGANIZATION NUMBER 9189952,

        Defendant.

- - - - - - - - - - - - - - -

ASPAN PETROKIMYA CO.,

        Claimant.
_____/     Washington, DC
                         March 17, 2023
UNITED STATES OF AMERICA,

        Plaintiff,

   vs.                     Civil Action
                         No. 1:21-cv-2817
ALL PETROLEUM-PRODUCT CARGO
ONBOARD THE M/T NOSTOS WITH
INTERNATIONAL MARITIME
ORGANIZATION NUMBER 9258014,

        Defendant.

- - - - - - - - - - - - - - -

ASPAN PETROKIMYA CO.,

        Claimant.
_____/     10:05 a.m.

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE RANDOLPH D. MOSS
UNITED STATES DISTRICT JUDGE

**APPEARANCES:**

For the Government:       **BRIAN HUDAK**
                         **DEREK HAMMOND**
                          DOJ-USAO
                          601 D Street, NW
                          Washington, DC 20530


For the Claimant:        **MICHAEL SATIN**
                         **TIMOTHY O'TOOLE**
                          Miller & Chevalier, Chartered
                          900 16th Street, NW
                          Washington, DC 20006


Court Reporter:          **JEFF HOOK**
                          Official Court Reporter
                          U.S. District & Bankruptcy Courts
                          333 Constitution Avenue, NW
                          Room 4700-C
                          Washington, DC 20001

### P R O C E E D I N G S

**DEPUTY CLERK:**  Your Honor, this is civil case 21-3234 and 21-2817, United States of America v. All Petroleum-Product Cargo Onboard the M/T Arina with International Maritime Organization Number 9189952, and claimant Aspan Petrokimya Co.; and United States of America v. All Petroleum-Product Cargo Onboard the M/T Nostos with International Maritime Organization Number 9258014, and claimant Aspan Petrokimya Co.

Would counsel please approach the podium and state your name for the record, starting with plaintiff's counsel.

**MR. HUDAK:**  Good morning, Your Honor.  Brian Hudak from the U.S. Attorney's Office.  With me at the table today is Derek Hammond, also from the U.S. Attorney's Office.

**THE COURT:**  Good morning to both of you.

**MR. SATIN:**  Good morning, Your Honor.  Michael Satin from Miller & Chevalier on behalf of the claimant. With me is Timothy O'Toole, who is counsel of record, as well as Helen Marsh, who is a lawyer at our office but is not counsel of record; but if it's okay with the Court, she's seated at the table.

**THE COURT:**  That's fine.

**MR. SATIN:**  Thank you.

**THE COURT:**  Well, it's your motion, so why don't you stay at the podium.  We're here on the motions to

dismiss in matter 21-3234 and 21-2817.

**MR. SATIN:**  So the issue before the Court is whether the Court should dismiss the complaint -- the two complaints in each of these cases for failure to state a claim, and the answer is yes.  Each complaint consists of a single forfeiture count under 18 U.S.C. 981(a)(1)(G)(i), and that provision provides two separate theories of forfeiture. The complaint fails with respect to each of them.

The first theory under the single count is that the defendant property was sold by the NITC to the Arina on behalf of the IRGC.  And in doing so, the NITC committed a federal crime of terrorism against the United States.  So it's this intra-Iranian activity that forms the basis of the alleged 2339B offense.  As we said in our papers, and as we'll argue here, the complaint does not establish that the NITC committed a federal crime of terrorism against the United States when they -- just not the case here, and I'll get into that in more detail.

The second theory is the source of influence theory, which is that the defendant property provides a source of influence over entities.  The government's theory has shifted a little bit as to which those entities are -- which I'll get into in a minute.  But either way, the complaint does not establish that source of theory -- source of influence theory either.

So unless the Court has any specific questions, I was going to go through those two different theories and address the various reasons why the complaint falls woefully short here.

THE COURT:  Okay, that's fine.

MR. SATIN:  So, like I said, the forfeiture theory number one is that this idea -- the complaint does not establish the NITC committed a federal crime of terrorism against the United States.  I want to be particular about that language.  It is the NITC that is alleged in the complaint to have committed a federal crime of terrorism against the United States.  That federal crime of terrorism against the United States is the alleged provision of material support from the NITC to the IRGC, or the IRGC-Qods Force -- I may be mispronouncing it.

THE COURT:  Qods Force.

MR. SATIN:  Qods Force, okay, thank you.  The complaint does not allege any facts about that intra-Iranian offense.

THE COURT:  Well, that's a little bit perhaps of an overstatement.  The complaint does describe the role of the NITC, cites to various government reports and findings that are incorporated by reference.  It cites to an OFAC report concluding that:  "The NIOC is an entity instrumental in Iran's petroleum and petrochemical industries which helps

to finance Iran, including the Qods Force and its terrorist proxies."  And it talks about:  "According to OFAC, the NITC has also played a significant role in oil leases used to generate revenue for the Qods Force and Hezbollah."  And then it cites to a report with respect to that as well.

**MR. SATIN:**  So what the Court is addressing -- actually, I don't even think they are reports, they are press releases.  These are almost all coming from press releases by OFAC, press releases that preceded the events at issue here.

**THE COURT:**  Well, we're just -- no, that's fine. But, I think, if you're -- you're shifting your point now in your theory now, I think.  I thought the point you were just making is you were saying that the complaint does not allege that NITC, through its activities generally, provides material support to the IRGC and the Qods Force.

**MR. SATIN:**  Let me be clear, then.  In connection with the defendant property here --

**THE COURT:**  Okay, well, so that's where I think you might be wrong on this as a matter of law.  If you actually read section 981, what it says is:  "All assets" -- all is a big word, it encompasses everything.  "All assets, foreign or domestic, of any individual, entity or organization" -- the NITC is an organization, it has assets, "engaged in planning or perpetrating any Federal crime" --

here, material support, "of terrorism against the United States," are subject to forfeiture.

So if there was a limousine owned by the NITC that was used to shepherd a director general of the NITC back and forth to an office in Geneva, I think that this provision could say you could seize that limousine if it had nothing whatsoever to do with the actual provision of material support. If it is an asset of NITC, it is subject to forfeiture if the NITC is an organization or entity that is engaged in providing material support in aid of terrorism. The language seems to be that sweeping.

**MR. SATIN:** Well, a couple things on that. First, I read the language differently, because I read it as currently. When it says engaged in planning or perpetrating --

**THE COURT:** Well, fine, fine. Do you have any doubt that the government of Iran to this day is using proceeds from oil sales for purposes of planning terrorism against the United States?

**MR. SATIN:** I'm not here to talk about what my views are on what the U.S. is -- Iran is doing today. I think that --

**THE COURT:** Right, but the question is just whether the complaint has plausibly alleged sufficient facts. I mean, if you want them to insert the word now in

the complaint --

MR. SATIN:  But that is not what is alleged in the complaint.  The complaint is pretty clear that the reason it is subject -- I shouldn't say pretty clear, because it's not that clear, it's pretty broad.  But the theory of forfeiture under it, as set forth at least in the complaint in the Arina one in paragraph 26, is it's specifically linked to the event at issue:  "The defendant property is ultimately an asset of NITC, which was being sold on behalf of the IRGC, or IRGC-QF.  In transferring the defendant property for the purpose of sale, NITC provided, or attempted to provide, resources to IRGC, or IRGC-QF, in violation of 18 U.S.C. 2339B."

So the government's theory, and what they've set forth here, is it's that specific event; namely --

THE COURT:  Well, but speak to the statute first.  Do you think am I right in my reading of the statute or am I wrong in reading the statute as broadly as I do?

MR. SATIN:  I think the Court is wrong, and I think --

THE COURT:  Okay, explain to me why.

MR. SATIN:  Sure.  Well, because I think the language is engage in planning or perpetrating, it has to be contemporaneous with the assets that are being sought to be forfeited.

**THE COURT:** But the language is -- I mean, there are other provisions -- forfeiture provisions which pretty clearly require that the property itself be used in a crime -- being used in a crime, and this contrasts with that. So any property involved in trafficking, for example, in other provisions of the forfeiture provision, I get that. But this is any assets of an entity engaged in planning or perpetrating. The engaged in planning or perpetrating doesn't modify the assets, I think it modifies the individual or entity.

So if the entity is today -- or at the day of seizure is engaged in planning or perpetrating terrorist attacks on the United States -- or terrorism against the United States, then any asset -- all assets of that entity are subject to forfeiture, whether they're the ones that are being used directly for that or whether they're just other assets of the entity. I mean, maybe there's case law that disagrees with that. But it does seem to me that the plain reading language of that provision reaches any assets of the entity engaged in planning or perpetrating acts of terrorism as compared to other ones, like 981(a)(1)(A): Any property, real or personal, involved in a transaction.

**MR. SATIN:** Although, I will say, I'm glad the Court is bringing up other provisions, because I think if the Court looks at 983, 983 -- let me make sure I get the

right provision, (c)(3), which is the substantial connection provision, says -- which applies to any provision, any civil forfeiture statute this provision applies.  It says:  "If the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the government shall establish that there was a substantial connection between the property and the offense."  That's what we have in this case.

THE COURT:  Why?

MR. SATIN:  Why do we have that?

THE COURT:  Right.

MR. SATIN:  Okay, because of the complaint. Because the complaint says that the property that was sought to be seized, the defendant property -- it says:  "In transferring the defendant property for the purpose of sale, NITC provided, or attempted to provide, resources to IRGC, or IRGC-QF.  The defendant property is therefore subject to forfeiture," right.  In other words, the government's theory of forfeiture is that this defendant property was involved in this criminal act.

The government's theory is not that this is just an asset of an entity who's engaged in terrorism.  The government's theory is that this particular asset was involved in this crime.  That's how they've pled it, and so

they have to establish a substantial connection between that property and this criminal offense.  And the government all but concedes that in their papers, and says that the substantial connection is that it's a connection to the overall scheme of terrorism.  But that's not what the 983 provision establishes.  The 983 provision has to be a connection -- a substantial connection between the criminal offense and the defendant property.

**THE COURT:**  I'm sorry, hold on a second.

**MR. SATIN:**  Sure.

**THE COURT:**  So two things about that.  One is I'll just have to ask the government about what their theory is in the case.  But the provision you're pointing to goes to the burden of proof, it's not a pleading requirement.

**MR. SATIN:**  Well, there may also be a burden of proof related to it, but the provision itself does say it applies to any civil forfeiture statute.

**THE COURT:**  Right, but I don't think you answered my question.  It's about a burden of proof which is something that is either at summary judgment or at trial, it's not something that goes to what you're required to plead.

**MR. SATIN:**  Yeah, although Rule G, Supplemental Rule G says -- Rule G(2)(F) says:  "The complaint must state sufficiently detailed facts to support a reasonable belief

that the government will be able to meet its burden of proof at trial."  So the requirements for the complaint relate to the burden of proof, and so that burden of proof provision in 983 and the substantial connection certainly applies here.

**THE COURT:**  So even if I were to grant you that issue -- and I still have my doubts, because I don't think you really answered my question about what the statute requires.  And even if the government has pled more than it's required to plead, I don't think that means that you dismiss the complaint because the government pled to a higher standard than it has to plead to.

If the statute simply says any property of an organization or entity that is providing material support to a terrorist organization is subject to seizure, it would be kind of weird for me to throw the complaint out and say, well, that's true, it would, but the government here tried to plead even a greater or a more substantial showing.

**MR. SATIN:**  Fair enough.  Can I address that -- let me address it more, please, specifically.  Obviously we -- we're responding to what the government has pled, and they've been pretty particular.  I think it is clear that their theory is a connection between the property.  But I take the Court's point, the Court thinks it's broader than that.  But one thing that is abundantly clear --

**THE COURT:**  Well, that's my reading of it, but I want you to tell me if I'm wrong about that.  But you have to tell me -- rather than just disagree, you have to actually point me to a case or something in the text that tells me that I'm wrong rather than just disagreeing with me.

**MR. SATIN:**  And let me pause on that for a minute and reflect on that.  And I'll tell the Court I came in prepared thinking that the theory was, because of the way it was pled, it was focused on a particular theory of there having to be a specific connection between the property and the criminal offense.  But anyway, I do want to just pivot for a moment and say -- just to be clear about what that crime of terrorism has to be under the statute, it has to be against the United States.  If the Court looks at 981(a)(1)(G)(i) --

**THE COURT:**  No, I understand.

**MR. SATIN:**  -- the federal crime of terrorism has to have been against the United States.  And that is extremely important in this case, because there is absolutely no nexus to the United States that's been established in this complaint.

**THE COURT:**  That's not true.

**MR. SATIN:**  Well, then I would ask the Court to point to where -- there's literally no mention of the United

States in this complaint.

THE COURT:  That is absurd.

MR. SATIN:  How so?

THE COURT:  I've already pointed you to where it refers to the United States in the complaint.

MR. SATIN:  I'm sorry, I don't -- please point it to me again, because I --

THE COURT:  So:  "The IRGC and Qods Force" --

MR. SATIN:  Can you tell me where the Court is, where you're reading from?

THE COURT:  Paragraph 25, "are designated Foreign Terrorist Organizations that have engaged in planning and perpetrating federal crimes of terrorism against the United States, citizens or residents of the United States, or their property."

MR. SATIN:  Yes, but that's not the NITC, it's the -- this is an act of the NITC.

THE COURT:  But the whole theory is -- I mean, come on for a second.  The whole theory is that Iran is a terrorist state.  The Qods Force is involved in acts of terrorism against the United States.  They finance that through the sale of oil, and it's the NITC that sells the oil.  I mean, I think that comes through from reading the complaint in a reasonable fashion.

MR. SATIN:  Well, first of all, paragraph 25 is

just essentially parroting the language of, like, a statute. There's no, like, facts about -- and that's what I thought the Court was going to be quoting from is parts from the factual distinctions.  So maybe I should have been clear, in the discussion of the facts in this case, there is no factual allegation of a crime of terrorism against the United States.

**THE COURT:**  I mean, I can tell the United States to go back to plead it, but do you have a millisecond's doubt that the United States will come back and simply -- I mean, they can add a paragraph or two adding detail on it. But do you have a millisecond of doubt that the United States will be able to adequately plead that the government of Iran and the Qods Force is involved in acts of terrorism against the United States, and they use oil for financing those acts of terrorism?

**MR. SATIN:**  But I don't think that's the question, because it's not about the IRGC.  The theory here is that this defendant property is an asset of the NITC.  So there would have to be evidence that -- and that's the crime of terrorism that's been alleged here, a crime of terrorism by the NITC.

**THE COURT:**  Which is material support.

**MR. SATIN:**  To the IRGC.

**THE COURT:**  And the complaint alleges that the

NITC provides support for the Qods Force and the IRGC.

**MR. SATIN:**  What is the crime of terrorism committed by the NITC against the United States?  That's just the intra-Iranian transfer.  The NITC is giving something to the IRGC.  That is not against the United States.  If the Court's point is that the IRGC in turn is doing things against the United States, that's fine, but that's not what's at issue here.  This isn't alleged to be an asset of the IRGC.

**THE COURT:**  If you wrote a check to Hezbollah, do you have any doubt you'd be creating a crime against the United States?

**MR. SATIN:**  If I, as a U.S. citizen?

**THE COURT:**  Yes, you just go out and write a check, I'm writing a check to Hezbollah, do you have any doubt you'd be committing a crime against the United States by doing that?  You'd be financing a terrorist organization where the United States is one of the prime targets of that terrorist organization.

**MR. SATIN:**  Right.

**THE COURT:**  That's a crime -- an act of terrorism against the United States, to provide material support to an organization that has the United States and U.S. citizens as one of its prime targets.

**MR. SATIN:**  I have to think about that; if I'm

writing a check to them, I'm committing a crime against the United States if I'm providing money to Hezbollah who is, or maybe is alleged to.  But I think if that's the theory, there would have to be some allegation of what I'm doing is a crime against the United States.  I may be committing a crime, but that's different than saying it's a crime against the United States.

And in fact, it's interesting, because in a lot -- this comes up in criminal case where, to decide if there's a federal crime of terrorism, it's not enough for the person to be found guilty of, say, the 2339B offense.  It has to have also been, you know, calculated to influence and affect and retaliate against U.S. conduct, right, there's that second --

**THE COURT:**  You've got to go a little bit slower.  You have to speak a little slower for the court reporter.

**MR. SATIN:**  Yeah, I'm sorry.  We haven't gotten to that provision yet, but it's not enough -- you know, to be against the United States is a separate question from whether or not it was a crime of terrorism.

**THE COURT:**  I understand if one were providing material support to a group -- to the Chechen rebels who are attacking Russian interests, that would not be a crime against the United States.  But to write a check to an organization that has been designated as a terrorist

organization by the State Department, by the Treasury Department, and where there is substantial documentation -- and I have had lots of cases of the Iranian government being responsible for the deaths of many Americans, it's a little hard to say that providing material support to the government of Iran and its terrorist efforts is not a crime against the United States.

**MR. SATIN:**  Well, I think it needs to be in the complaint, number one.  And number two, to be clear, the complaint itself does not -- the example the Court just gave of me giving money to Hezbollah, that's an allegation of a transfer of money from, in this case, an individual to a terrorist organization.  We don't have that in this complaint.  The only transfer that is alleged is the transfer of oil from the NITC-owned Stark to the Arina.  We don't have anything about -- as it relates to this defendant property, as it relates to the NITC to the IRGC.  So that analogy is quite distinguished from the facts that are alleged here.

And the Court seems to be taking the view -- and I think the government, that the actual events giving rise to the forfeiture, to the seizure are essentially irrelevant.  And I think that's not right.  I think that --

**THE COURT:**  I'm waiting for you to explain that to me.  You haven't told me yet why my reading of the statute

is incorrect.  I take your point about the complaint, but I haven't heard a response to my reading of the statute yet.

**MR. SATIN:**  Well, I think that if the Court's -- because of the tense in the statute, it doesn't say of any individual, entity, or organization that has ever committed a crime -- a federal crime of terrorism.  It says planning or perpetrating.  There is some contemporaneous to it -- contemporaneity to it.

**THE COURT:**  Well, that's fine, I'm willing to grant you that.  If it turned out that the Iranian government and the IRGC and NITC washed their hands of terrorism and this happened afterwards, I would take your point.  But it does say all assets of any entity engaged in planning or perpetrating.  I don't think it's a reasonable reading of that to say that the assets have to be engaged in, it's the entity that's engaged in.

**MR. SATIN:**  Well, I think the Court should read the 981 provision in conjunction with the 983 one that we discussed earlier about it being involved.

**THE COURT:**  You only get there by -- the only argument you made to get there was that's what the government alleged in the complaint.  But if the government just doesn't allege that in the complaint and just alleges the broader theory, then you never even get to 983.  Because 983 only applies sort of somewhat circularly where the -- if

the government's theory of forfeiture is that the property was used to commit or facilitate the crime.  So you only get there --

**MR. SATIN:**  Well, but here's another thing I think the Court should keep in mind, is that even if the Court is right on its reading of the statute, there's still -- based on these -- what the Court is calling reports and I'm calling press releases, there's nothing within those that establish that a federal crime of terrorism has been met; in other words, that the elements of that crime have been met.  And the OFAC press releases, they're not findings based on evidence.  They're not --

**THE COURT:**  We're not even at summary judgment yet, this is just a complaint at this point.

**MR. SATIN:**  Right, and all we have are quotes from press releases.  So we don't have anything that shows from those quotes that there was in fact a crime of terrorism that's been committed by the NITC.  So even if the Court is right that the statute is as broad as the Court thinks it is -- and I disagree, there would still need to be within the complaint factual allegations -- sufficiently detailed factual allegations that establish a crime of terrorism -- a federal crime of terrorism, in this case, 2339B.  And it's not in the complaint.  OFAC findings are not findings where the entity is saying the elements of 2339B have been met,

they're not criminal findings.

THE COURT:  Fair enough.  But it is just a complaint, even if there are heightened pleading standards that apply here.  And the complaint alleges that:  "The Iranian Ministry of Petroleum has been used by individuals at the highest level of the Iranian regime to facilitate the Qods Force's revenue generation scheme."  The complaint alleges that the Qods Force official, Rostam Ghasemi, previously served as the Iranian minister of petroleum.  It alleges that Qods Force is a terrorist organization.  It alleges that:  "The NITC has materially assisted, sponsored or provided financial, material or technological support for, or goods or services in support of, the Qods Force." And that, by the way, is an Executive Order, it's not a mere press release.

MR. SATIN:  I can go one by one.  I mean, a lot of these are, what, seven or eight years preceding the events at issue here, right.  So the seizure happened in I think the fall of 2021.  The Court is focused, in some cases, on statements --

THE COURT:  I was just reading something from October of 2020, a finding by the President of the United States.

MR. SATIN:  Where is the Court reading from?

THE COURT:  Paragraph 12.  I'm sorry, it's an OFAC

designation, but still pursuant to an Executive Order.

**MR. SATIN:** Yeah, but -- again, this is a press release.

**THE COURT:** It's a press release reporting that OFAC has made the finding pursuant to the Executive Order.

**MR. SATIN:** I think -- you said the Executive Order. I think it's a press release in connection with just the designation.

**THE COURT:** Right, correct, but OFAC made that designation.

**MR. SATIN:** It's an OFAC designation pursuant to an Executive Order. The Executive Order was issued that day as to this issue.

**THE COURT:** Yeah, okay. You want to move on to your next argument.

**MR. SATIN:** Sure. So the complaint is bare boned as it relates to the defendant property, and that's the government's theory of forfeiture here. I think that Rule G, as we've talked about, applies here, and the substantial connection, which isn't involved -- it sounds to me that the Court is not necessarily disagreeing on that, it's just disagreeing on the scope of the statute.

**THE COURT:** Well, no, I want to hear from the government on that question.

**MR. SATIN:** I've discussed already the lack of

nexus to the U.S.  The statute is clear that the offense must be against the United States.  And it's important that the offense itself is the NITC's alleged provision of material support to the IRGC.  It is a wholly intra-Iranian offense, and the complaint is I would say silent or nearly silent on -- that it being against the United States.  There are talk of the IRGC being involved in activities in the Middle East and global activities, but this complaint is silent as it relates to what they are doing against the United States.  It sounds like the Court has its views based on other cases, and --

**THE COURT:**  No, it's based on the language of the complaint and common-sense:  "The IRGC and Qods Force are designated Foreign Terrorist Organizations that have engaged in planning or perpetrating federal crimes of terrorism as defined in 2332b(g)(5) against the United States."  If you think that that's not a plausible allegation in some respect, that's one thing.  Again, if you want the United States to come in and add some allegations about this, it's just going to delay the case, that's fine.  I don't think we have any doubt that they can and would do that.  I mean, that may be fine to have them add that in the complaint, but it's not a particularly controversial proposition.

**MR. SATIN:**  I'm going to move on to other issues I also think are important.  The complaint does not establish

that the NITC's alleged offense was calculated to influence, affect or retaliate against government conduct.  That's not even pled in the complaint, which is -- a federal crime of terrorism is two things:  It's the commission of an enumerated offense -- in this case, it's 2339B); and it also has to have been an offense that was calculated to influence or affect the conduct of government by intimidation or coercion or retaliate against government --

**THE COURT:**  Slower, slower.

**MR. SATIN:**  Sorry.  I'm just quoting from 2332b(5) which defines federal crime of terrorism, and I want to be clear that it's two things.  It's the offense -- the 2339B offense is one of the enumerated offenses.  But 2332b(5) has two provisions.  The first one is the calculated to influence or affect provision.  That's not even pled here, much less any facts alleged in support of it.  It's subsection A of --

**THE COURT:**  No, I know it.  That's fine, I understand your argument.

**MR. SATIN:**  I want to be clear that in order to establish a federal crime of terrorism, there's two things that need to be --

**THE COURT:**  No, I understand the argument.

**MR. SATIN:**  And the second one -- or really the first one in terms of how it's listed is not even pled, much

less there aren't any facts alleged in support of it.

**THE COURT:**  I guess I'm not convinced on that, but I understand your point.

**MR. SATIN:**  You're not convinced that it's -- you think it is -- the Court thinks it is pled?

**THE COURT:**  I'm not ruling, I'm just telling you at this moment I'm not convinced by that argument.

**MR. SATIN:**  The second -- now shifting gears to the source of influence theory --

**THE COURT:**  I think it is a reasonable inference if someone is providing money to one of the principal sources of terrorist attacks on the United States, that has been engaged in a decades-long essentially battle with the United States, that it's a reasonable inference to say that that is being done to influence the policy of the United States:  If you get out of Israel, maybe we're not going to be funding attacks on the United States in the same way. And if you're giving money to the Qods Force, it seems like that is a reasonable and plausible inference, reading the complaint in a reasonable manner.  That's my point.

**MR. SATIN:**  I understand.  Even if we disagree on the inference -- and we do, I don't think there can be any disagreement as to whether or not it was properly pled in the complaint.  The second is the source of influence theory of forfeiture, which again was also improperly pled.  So

just to orient the Court, sort of two theories of forfeiture here.  One is the first provision of the 981(a)(1)(G)(i), which we've discussed, which is:  "of any individual, entity or organization engaged in planning or perpetrating any federal crime of terrorism against the United States citizens or residents of the United States or their property" --

**THE COURT:**  You're going too fast.  The court reporter can't get it down when you just read quickly like that.

**MR. SATIN:**  Oh, sorry.  During the pandemic, as I've been in court less and less often, I've sped up my speech, so I apologize for that.

**THE COURT:**  Okay.

**MR. SATIN:**  The second part was the:  "All assets, foreign or domestic, affording any person a source of influence over any such entity or organization."  So that's the second part of the 981(a)(1)(G)(i).

**THE COURT:**  Right.

**MR. SATIN:**  And that has been improperly pled here, because the complaint does not name any person who allegedly had this source of influence over any entity.  The complaint does not plead any person.  If the Court looks at paragraph 27 of the complaint in the Arina case:  "Further, the defendant property provides a source of influence over

entities and organizations," and it doesn't say to whom.  It doesn't include a person, and --

**THE COURT:**  Is your argument that it has to be a natural born person or that entities do not qualify as persons?  I just want to make sure I understand your argument.

**MR. SATIN:**  I think it actually has to be an individual.

**THE COURT:**  Why do you think that?

**MR. SATIN:**  Well, because it uses the word person, and in other provisions in the same section it refers to entities or organizations.  So if it was going to be so broad as that, then it would have used that language.  So the fact that it chose the word person there, I think it means an actual living and breathing person.  But even if I'm wrong on that, even if it can be read to be broader than that, to include an entity, this complaint doesn't name that quote, unquote person, that entity.  It doesn't plead it properly nor does it mention at any point during the complaint who is this unnamed person with this source of influence.

So the complaint is improperly plead with respect to the source of theory influence -- source of influence theory.  And it also doesn't include any facts.  Even if we can try and guess who that person would be, it's unclear how

that person, whoever it is -- or he or she is, how that person would have a source of influence over the IRGC or the QF, Qods Force.  How can this -- if the idea is that it's supposed to be -- I don't know, I'm curious to hear what the government says on this.  If it's supposed to be a person associated with the Arina, the ship, how they have a source of influence over the IRGC, especially when there's no allegation that that person has any connection to the IRGC or the IRGC-QF, much less at the time of the seizure of the property.  And I think the contemporaneity is important here.

There are a couple of cases in this court by Judge Boasberg, the Bella and the Grace One, that looked at this source of influence theory.  And in those cases -- I think those cases are easily distinguished on a number of grounds, but those persons were named and had a connection to the IRGC.  Here, we don't have that at all.  And in full disclosure, in those cases, I don't know if it was really addressed, the persons are not only individuals, we take the view that persons should be an actual individual.  I think in those cases, it was an individual and one was an entity.  Although those are default judgments, so they were not litigated.

But regardless of that distinction, the important point is that in those cases, those persons were named and

had a clear connection to the IRGC.  Here, we don't have that.  We have an unnamed person, unpled person, and no reason to think that whoever it or they are has some kind of source of influence over the IRGC.  And that's especially true when we think of the timing.  I think, again, the timing is important.  The complaint alleges no facts that this unnamed person had a source of influence over the IRGC at the time of the seizure of the property -- which was a good -- almost a year later from when this transfer happened.

THE COURT:  Anything else?

MR. SATIN:  I don't have anything else at this point.

THE COURT:  Okay.  Let me hear from the government, I'll give you a chance for rebuttal.

MR. SATIN:  Thank you.

THE COURT:  Mr. Hudak.

MR. HUDAK:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. HUDAK:  Aspan is correct that the government advances two theories of forfeiture here.  One is that the property is an asset of an individual who committed a federal act of terrorism.  And two, that it affords persons a source of influence over others who have done so.  As to the source of influence, the motion to dismiss does not seek

to dismiss that theory.  There is no mention of source of influence anywhere in the motion other than in its citation of the statute.  There is no argument constructed that the complaint fails to state that claim.  There is no discussion of any of the points that we just heard about source of influence in the motion to dismiss.  And so it's forfeited as a matter of procedure in this court.

THE COURT:  Can you explain to me what the theory is?

MR. HUDAK:  Sure.  It's a backup theory.  If the Court were to find our allegations regarding NITC and NIOC to be insubstantial or inefficient -- or insufficient to plead a direct federal act of terrorism, certainly their assets here -- the petroleum aboard the Arina, provide NITC and NIOC a source of influence over the IRGC and IRGC-QF.

THE COURT:  Okay.  I take it your view then is that an entity can be a person for purposes of this provision?

MR. HUDAK:  Correct, and I think it tracks the language of the statute.  If the Court examines (g)(i), it begins by saying:  "All assets, foreign or domestic, of any individual, entity or organization."  And then it goes on to say for a principal violation, all of their assets are forfeitable.  It then says -- it picks it up and kind of shorthands summarizing individual, entity or organization

and says:  "All assets, foreign or domestic, affording any person a source of influence."  So, I mean, it does distinguish in the first clause of individual, entity or organization, but then picks up person as kind of the shorthand for those three nouns in the second clause of 981(a)(1)(G)(i).  And certainly the dictionary definition of person includes entities and individuals.

THE COURT:  I was going to ask you whether the Dictionary Act says anything about the definition of person?

MR. HUDAK:  It's not in our briefing, I believe it does.  I think person is defined in the Dictionary Act to be not just natural persons or individuals, but also entities that have a separate recognized structure.  As far as the complaint not pleading that, the complaint doesn't need to plead legal theories, it needs to identify the claims and plead facts sufficient to make those claims plausible.  In the forfeiture context, under Supplemental Rule G and E, the standard is a little bit different.  It has to plead enough to put the claimants on notice as to what the facts giving rise to forfeiture are.  The language is a little bit different and articulated different.

Some courts have held that that's a slightly higher standard than our typical Iqbal/Twombly, but it is not the particularized pleading standard of Rule 9(b) either, it doesn't go that far.  So it's somewhere in

between closer to Iqbal and Twombly, and we believe that the complaint -- its factual allegations plainly plead that NIOC and NITC's operations to sell oil to finance terrorist activities provides them a source of influence over the IRGC and the Qods Force.

**THE COURT:**  Do you know if the NITC is a corporate entity of some type, even a government-owned corporation?

**MR. HUDAK:**  I believe the C in it is corporation, but I do not have -- one moment, Your Honor, if I can refer back to our complaint.

**THE COURT:**  Company is the --

**MR. HUDAK:**  Yeah, company.  I'm not sure of the exact formal --

**THE COURT:**  Well, that answer may answer my question, because the Dictionary Act says unless the context states otherwise.  And I understand Mr. Satin's argument about the context.  But putting that aside for the moment, it does say that a person includes corporations, companies, et cetera.  So the question then would just be whether the Dictionary Act is trumped by the context and the fact that the earlier clause refers specifically to individuals, entities or organizations.

**MR. HUDAK:**  Correct.  And again, I think if it refers to companies, the term company is in fact in the organization's name itself.  And so I think there's a

plausible basis on the allegations in the complaint to believe even if the Dictionary Act controls, that NITC and NIOC would both fall within the definition of person.  As far as the first clause -- and I'm happy to answer any other questions on source of influence if the Court has them.  But as far as our allegations as to the first clause, I think the Court raised -- wanted to understand the government's position on the connection of this asset to the overall financing scheme of terror.

**THE COURT:**  Yes.

**MR. HUDAK:**  And as an initial matter, as we argued in our motion papers, we don't believe the provisions of 983(c)(3) apply here, because our theory of forfeiture is not one where the statute commands it be involved in or committed to use or committed to facilitate.  Instead, Congress has made the decision that anyone who perpetrates a federal act of terrorism, all of their assets -- the limousine, the desk, their pencils, are forfeitable under the laws of the United States.

And so our theory here is not that -- it's not premised on involved in, which is a separate provision of the terrorism forfeiture provisions of 981(g).  981(g)(3) is all assets derived from, involved in, used or intended to be used to commit a federal act of terrorism -- federal crime of terrorism.  It's not that theory.  We plead the sub one

theory which is all assets of someone who is engaged in perpetrating or providing all assets that afford a person a source of influence over that person that is engaged in perpetrating.

**THE COURT:**  So what do you say in response then to Mr. Satin's argument that paragraph 26 seems to allege the narrower theory, and that these assets were actually used themselves for the purposes of financing terrorism?

**MR. HUDAK:**  So if we parse it out, I think you stopped the sentence halfway through the third sentence there.  But in transferring the defendant property for the purposes of sale, NITC provided, or attempted to provide, resources to IRGC and IRGC-QF in violation of the statute. That was to express that they are currently engaged in perpetrating -- again, we heard some argument that there's a contemporaneous requirement.  And that was designed to satisfy that element, that this is not -- this conduct isn't ceased, it's part of the overall scheme that is alleged earlier in the complaint.

It then goes on to say -- and here's the operative sentence:  "The defendant property is therefore subject to a forfeiture pursuant to 981(a)(1)(G)(i) as an asset of NITC, an entity that engaged in the planning and perpetration of a federal crime of terrorism; that is, providing material support to a Federal Terrorist Organization."  So our

theories we think are spelled out.  Not only do we cite the provision that says all assets of an entity that engages in a federal crime of terrorism are forfeitable, but then our concluding sentence here, which describes the theory of forfeiture for that first clause, describes that the forfeiture is because it's an asset of NITC.

And then in paragraph 27, again, is our allegation -- kind of summary allegation regarding source of influence.  That allegation, again, was not addressed at all in the motion to dismiss.  The first time it appears in any arguments on source of influence appears in their reply brief.

**THE COURT:**  If the Court were to conclude that the complaint should be dismissed without prejudice and provide the government with the opportunity to replead, what happens to the seized property?  So if I say I'll give you two weeks to replead but I dismiss, does the property just stay under seizure order if I don't dismiss the case but I dismiss the complaint?  I'm just curious about what the logistics are.

**MR. HUDAK:**  I think that's right.  The seizure order for this property was obtained in a separate proceeding, and the forfeiture proceeding was filed on -- later after the seizure warrant was effected.  And so I believe that as long as of the Court doesn't dismiss the action but dismisses the complaint or says -- makes a

finding that the complaint doesn't plausibly allege the basis for forfeiture, that we would be afforded an opportunity to replead before any kind of final order would be issued that would terminate the action.

That said, Your Honor, we believe the complaint -- and again, we went above and beyond and not only made the factual allegations in the complaint, but also cited to source documents of professionals in this area that other cases from this court -- Judge Boasberg, have concluded are authoritative in this area, and not only support plausibly a basis for entitlement, but were sufficiently well pled to support a basis for default judgment in two other cases involving tankers full of Iranian petroleum.  So it's the exact factual circumstances here, the Bella and the Grace One.

**THE COURT:**  So the question I have is under Supplemental Rule G(2), the government is required to plead the grounds for subject-matter jurisdiction, in rem jurisdiction over the property of the defendant, and is required to plead with some heightened particularity.  I think that the claimant is correct that the government doesn't say anything about the jurisdictional hook in 2339 -- or I'm sorry, 2332a -- give me a second here.  No, I'm sorry, it's 2339B(d), what the basis is for jurisdiction over the underlying offense of the providing of material

support. And in your briefs, you do come back and you say, well, we think that there is a foreign commerce hook here, but it's not pled in the complaint. And you say, well, in the criminal context, you're not required to plead jurisdictional facts. But here, the supplemental rules do actually say you have to plead jurisdictional facts.

So I guess the question is why shouldn't I dismiss -- and perhaps there may be some other areas where some further clarification is required, but at least as to this, required to come back and plead which jurisdictional theory you're relying on, or if there are more than one.

**MR. HUDAK:** Sure. Well, the subject-matter jurisdiction of this court is not derived from the criminal statute, it is separately set forth in the jurisdiction for the civil forfeiture proceedings. So it is set forth in 14 U.S.C. 522(a), and 28 U.S.C. 2461(b). When we are alleging a predicate criminal act, it becomes part of the claim, it does not become part of the jurisdiction.

**THE COURT:** I think that's a fair point, but the same question then, though, given the requirement of pleading with some particularity.

**MR. HUDAK:** Sure. And so we think that -- again, our obligation -- one, it's not a jurisdictional obligation to identify the source of a jurisdiction, our obligation is to identify the statute we're proceeding under, and allege

facts sufficient to make it plausible to support that claim. And the -- not only the allegations in the complaint, but the sources that are cited and incorporated thereon are replete with information regarding how Iran's oil sales affect foreign commerce, so much so that the Office of Foreign Asset Control of the United States is regulating them in foreign commerce. So I think it would be a very far stretch to say that the complaint does not have enough factual heft to allege that the allegations here have a role in foreign commerce.

But even if, Your Honor, even if you believe that more heft was required, there is an alternative basis for extraterritorial jurisdiction in 18 U.S.C. 2339B(d)(1)(F), which provides that the jurisdiction of aiders and abettors or conspirators if jurisdiction is met, if jurisdiction is over the principals. And here, assuming that we're talking about NITC and NIOC and their role in foreign commerce, we think, again, that's sufficiently alleges a factual matter. But there is no doubt and there is no argument in the motion -- which, again, we're kind of moving goalposts here. But there's no argument in the motion that the IRGC and IRGC-QF have not targeted U.S. citizens and carried out their activities such that they would be subject to the jurisdiction of the U.S. courts.

In fact, there's plenty of authorities that we

cite in our brief that they are indeed, and have been found, to be subject to the jurisdiction of the U.S. courts.  So even if the Court believes there's not a lot of factual heft to conclude that the activities of NITC and NIOC affect foreign commerce, they are in this role providing material support, aiding and abetting other principal wrongdoers; namely, the IRGC and the Qods Force and their activities. And clearly the Court has jurisdiction over them for their crimes of terrorism, and thus in turn would have jurisdiction over the aiders and abettors.

Again, we believe these are claim defects that the factual allegations in the support -- in the complaint plausibly allege support for, that NIOC and NITC's activities are engaged in foreign commerce.  In fact, a lot of the materials cited talk about how the use of Iranian sales of petroleum fund the IRGC-QF activities, not only to carry out their own illicit operations, but to fund those of Hezbollah, the Assad regime in Syria.  There are allegations that they permitted folks from Al Qaeda to cross through and have safe passage from Africa into Afghanistan, including folks that perpetrated September 11th.  There are allegations in those press releases about their role in the Khobar bombings.  I mean, just recently, I think within two weeks of us filing the motion to dismiss, there was press releases about the IRGC actively conspiring to try to kill

former Ambassador Bolton for his role in carrying out the U.S. authorities against Iran as a federal government official.

So the notion that these activities aren't affecting foreign commerce is just really not supported at all.  You would have to ignore large swaths of the materials that are incorporated into the complaint to suggest NITC and NIOC are not engaged in foreign commerce here or that the principal wrongdoers -- the primary wrongdoers here are IRGC and IRGC-QF, fall outside of the jurisdiction of the U.S. courts.

**THE COURT:**  What about the lack of particularity with respect to the source of influence theory?  I understand that's an alternative theory, and I understand the arguments may be forfeited because they weren't raised in the motion to dismiss.  But is that something where it would be helpful to have the United States plead a little bit more detail about what its theory is there?

**MR. HUDAK:**  Your Honor, I don't think so.  Again, it goes to the claims.  So again, our obligation in the complaint is not to plead our legal theories, but rather to identify the claim we are bringing and plead facts in support of that claim.  And the facts in support of that claim in the complaint plainly show that NIOC and NITC, the petroleum that they sell affords them a source of influence

over the IRGC and IRGC-QF.  I mean, there are specific allegations in the complaint that factually say that.

"NITC is a subsidiary of NIOC, and is responsible for the transportation of Iranian crude exports.  According to OFAC, NITC has played a significant role in oil deals used to generate revenue for the IRGC-QF and Hezbollah, and has provided vessels for use in IRGC-QF's oil operations." It goes on, and the authorities -- again, we tried to paraphrase the authorities and cite them to incorporate them by reference as opposed to making this complaint kind of longer and more unwieldy.  But the allegation -- the material cited, some of which we attached as exhibits to our papers, go on and discuss NIOC and NITC's role as being integral to the financing of the IRGC-QF.  And if it is integral, it's obviously affording them a source of influence over those terrorist organizations.

Again, it's a backstop theory.  If the Court were to believe that the complaint doesn't adequately plead a material support claim against NIOC and NITC, there's an alternative basis to pursue these and ultimately to prove our allegations of forfeiture at trial, that not only are they providing material support, but the petroleum affords them a source of influence over the principal wrongdoers here.  But certainly the complaint pleads enough facts to make out that theory, and the United States believes that

that theory is well pled and adequately done so under the rules.

**THE COURT:**  What about the argument that Mr. Satin raises with respect to the requirement under the definition of a federal crime of terrorism, that you plead not only a violation of the material support provision, but that also that the offense at issue here -- which is I take it by NITC, is calculated to influence or affect the conduct of the government by intimidation or coercion or to retaliate against government conduct.

**MR. HUDAK:**  Yep.  And again, looking at the case law and the gloss on that provision, I would point the Court to Judge Kollar-Kotelly's opinion in United States against Mohammed where she discussed that provision at some length. That provision doesn't require a determination that the defendant was personally motivated by a desire to influence or affect the conduct of government, but instead the government must demonstrate that it is more likely than not the defendant intended to promote a crime calculated to have such effect, whatever his reasoning for committing the crime.

And again, what is missing from the motion is any suggestion that the IRGC and IRGC-QF's terrorism is not designed to influence, affect or retaliate against the U.S. government.  In fact, there are allegations in the

complaint, and authorities contained therein, that that's exactly what they're trying to do.  And so the Court -- to accept the claimant's argument, the Court would have to suggest that NIOC and NITC -- that there's no plausible reading of the allegations in the complaint that NIOC and NITC did not intend to promote that crime, which is the furtherance of the terrorist activities of the IRGC-QF and the IRGC as they pertain to the United States.  And we think that that's an implausible reading of the complaint with all the factual allegations and all the materials that are incorporated therein.

**THE COURT:**  Okay.  Anything else?

**MR. HUDAK:**  That's it, Your Honor.  Thank you very much.

**THE COURT:**  Mr. Satin, I'll give you a brief reply.

**MR. SATIN:**  Thank you, Your Honor.  Briefly, I was eager to hear who would be the person that the government was saying was the entity --

**THE COURT:**  What about the government's argument that you just didn't raise this in your motion to dismiss, and therefore at least at this point it's forfeited -- it doesn't mean you can't raise it later, but that it's forfeited now?

**MR. SATIN:**  No, that's not correct.  First of all,

we filed a motion to dismiss the complaint for failure to state a claim.

THE COURT:  Right, but where did you make this argument?  I mean, you still have to make --

MR. SATIN:  So a couple things.

THE COURT:  -- point to a particular deficiency.

MR. SATIN:  Sorry?

THE COURT:  You still have to point to a particular deficiency.  You can't file a motion to dismiss the complaint on the grounds that it doesn't adequately allege that the moon circles the earth, and then come in and say we're dismissing on the grounds that the earth circles the sun.

MR. SATIN:  No, we said that the complaint failed to state a claim.

THE COURT:  Right, that's not sufficient.  Okay, tell me where you raised this argument.

MR. SATIN:  Well, we raised in it that there has to be -- I'm looking back at the statute.  We said that there has not been -- the government didn't sufficiently plead facts that establish that a crime of terrorism had been committed.  So that's part of both provisions of the 981(a)(1)(G)(i) that we talked about, right.  Because the second provision, any such entity or organization engaged in a federal crime of terrorism.  So when we raised in our --

when we made our argument, it applied to both provisions, both theories of forfeiture.  Because there are parts of our argument that apply to each; namely, that there has to be proof or allegations of a federal crime of terrorism.  So that wasn't met here.

If the government's point is that we weren't specifically focused on the failure to name a source of influence, I think that's right.  I mean, we take the point that we could have been more clear on that specific point.  But it is pretty confusing the way this was pled, because they don't name that person, and the thrust of their argument is about something else.  So we should have stated the obvious in our opening brief, and I concede that we should have stated it.  They come back pretty forcefully that we didn't -- you know, about this second theory, and we're just merely pointing out that it was improperly pled or alleged.

They certainly could have sought a surreply or another opportunity to brief that issue if they had something to say on it.  So I don't think it's been forfeited, much less waived.  We are just at the district court, it's not like we're on appeal here.  But I think we did make the argument in our opening brief about failure to state a claim, and our reply was well within the scope of their opposition.  They responded forcefully about the

second theory, and we responded -- we replied to that about why it was improper. So that's kind of how the briefing went here. If they had something they wanted to add in response to what we said in our reply brief -- which was in opposition -- in response to their opposition, they could have either sought leave to file something or they can make the argument here.

And I was anxious to hear who they would say was the named entity or the named person, since it was not identified in the complaint. And I'm not -- I'm still not certain what I heard from them. I heard a lot of trying to focus on what we did or did not put in our brief. But to the extent that their argument is it's the NITC that is the unnamed and unidentified person, I just want the Court to know how little sense that makes. Because paragraph 27 says: "Further, the defendant property provides a source of influence over entities and organizations; namely, NITC, the IRGC, and IRGC-QF." It can't be that the NITC -- that the defendant property provides a source of influence to the NITC over the NITC. I think that's who the government -- correct me if I'm wrong --

**THE COURT:** It may be that you could raise that argument in a motion for judgment on the pleadings -- assuming that's appropriate in a forfeiture case, in some other mechanism. But it is true, you didn't raise that

argument until your reply brief.

MR. SATIN:  But I still think it's correct that --

THE COURT:  I mean, I don't know whether it's correct or not, because I don't know the law on whether person has its usual meaning under the Dictionary Act here or whether in the context here I should not give the word person the meaning it gives it in the Dictionary Act.

MR. SATIN:  What I'm saying, though, Your Honor, is even if person was broader than we think it is that it's an individual, a breathing individual, and it's an entity, it doesn't make sense for it to be the NITC.  Because the way they have pled this is that:  "Defendant property provides a source of influence over entities and organizations; namely, NITC, the IRGC, and IRGC-QF."  It cannot be that the defendant property provides a source of influence to the NITC over the NITC.  That can't be right. When they say the Bella and the Grace -- again, they were default judgments, but in those cases, there were a person -- or an entity in one case, that was named that had a clear connection to the IRGC-QF; not the NITC, someone else.

THE COURT:  But even if you're right, that the NITC cannot be an influence over the NITC, the NITC can be an influence over the IRGC or the Qods Force, and both of those are alleged as well.  So maybe you're right that I

have to cross the NITC off that list.  It doesn't mean that the pleading is insufficient, though.

**MR. SATIN:**  Well, but of course this property was seized not from the NITC, it was seized from the Arina.  So I thought what the government is suggesting, when they're comparing to the Bella and the Grace, that it's the Arina or that other third party that was involved in some kind of a transaction.

**THE COURT:**  No, I understand.  But the allegation here is that it was the property of NITC.

**MR. SATIN:**  Right.  I don't think its possession of that property, by its possession, provides it a source of influence over the IRGC.  Lastly, I'll just say another point they made was this question of the effect on foreign commerce as it relates to 2339.  Again, that is not pled.  There are no facts as to how this affects United States commerce, that's not in the complaint.

**THE COURT:**  Well, but I think what they say is that there is enough that is incorporated by reference from the documents that are cited that establish that the provision of material support to factions of the Iranian government that are involved in acts of terrorism against the United States affects interstate commerce; as well as the fact that the OFAC has decided to assert its authorities in this area means that there has to be a foreign commerce

nexus, because that's the scope of the OFAC power.

**MR. SATIN:** But the alleged criminal offense here, crime of terrorism, is a wholly intra-Iranian offense. It's the NITC's alleged provision of material support to the IRGC. So the notion that --

**THE COURT:** That is a really strange statement. I don't understand that. Going back to my example, that would mean that when you write that check to Hezbollah for a million dollars, it's just between you and Hezbollah, it doesn't have anything to do with --

**MR. SATIN:** But I'm a U.S. citizen, so if a U.S. citizen is giving something to Hezbollah, that's different. Because it's an inter-country and interstate event. Here we're talking about two entities wholly within Iran having a transaction. It cannot be -- if the NITC gives tissues or toilet paper or something else to the IRGC, is that -- again, is that provision of material support?

**THE COURT:** I would think so.

**MR. SATIN:** So anything that happens, any intra-Iranian offense necessarily has an effect on --

**THE COURT:** No, no, any support that is given to the Qods Force, which is devoted to acts of terrorism and is the external Iranian military entity that is involved in acts of terrorism around the world, including against the United States, if you're supporting that -- even if you're

doing it as an Iranian entity, I think you're literally violating the statute.

MR. SATIN: I --

THE COURT: At least if you're doing so in a way that --

MR. SATIN: I think that is -- I think that is just wrong. I think that it is not -- it's certainly not subject to the jurisdiction of this Court.

THE COURT: That's certainly not an argument that's in the briefs.

MR. SATIN: No, the government's argument, though, was petroleum is -- affects global commerce. They spent a lot of time in their opposition talking about petroleum and what it does in the United States and worldwide, because they really want to focus on the fact that it's provision of oil from the NITC, the Stark, to the Arina. But that's not the alleged criminal offense here. The alleged criminal offense is the wholly Iranian transfer -- alleged transfer between NITC and IRGC.

THE COURT: Let me ask -- I just have one more question for Mr. Hudak on this.

To the extent the theory is one of effect on petroleum markets internationally, where is that in the complaint?

MR. HUDAK: I think you would have to look at the

authorities that are incorporated therein.  And Your Honor --

THE COURT:  Can you point me to one of them?

MR. HUDAK:  Yeah, if you look at the authorities cited at paragraph 11, which is Exhibit A to the government's opposition, the authorities cited at paragraph 12 -- which is the authority that is attached as Exhibit B to the government's opposition.  And there's -- I would also refer the Court to see basically the exhibits to our motion, which in our papers we identify where they're cited in the complaint.  For instance, Exhibit A where Treasury's targeting international networks supporting Iran's petrochemical and petroleum industries, it goes into talking about how those are major sources of revenue for the Iran regime, and funds its maligned activities throughout the Middle East; that is, in foreign commerce.

It goes on to talk about -- in Exhibit B, we talk about how NITC has played a significant role in oil deals used to generate revenue for not just the IRGC-QF, but also Hezbollah.  And again, that's foreign commerce.

THE COURT:  Although, I think that it's a fair argument that foreign commerce in this context must be understood to be foreign commerce that has some effect in the United States, and that it's not just between two foreign nations.  It doesn't actually affect the United

States, that seems to be a reasonable interpretation.

**MR. HUDAK:**  I think that's probably right.  And we go into in our brief, on pages 16 through 18, the analysis there about how oil sales would have a direct effect on the United States.  It doesn't have to be a substantial effect.

**THE COURT:**  Right, but is that anywhere in these exhibits?  My real question is do you have to go back and plead with some --

**MR. HUDAK:**  I mean --

**THE COURT:**  -- or is it here already?

**MR. HUDAK:**  -- I think it talks about the direct effect on international oil markets.  I don't know if we're going to see an elaborate discussion about how that -- you know, how a barrel of oil sold in Iran affects the oil prices in the United States.  If the Court thinks that's required, then perhaps we have to supplement our complaint.

But again, I want to get back to the example that the Court just talked with Aspan's counsel about, how about providing a tissue in Iran to the Qods Force, whether or not that is within the terrorism statute here.  It is, because the Court has jurisdiction over the Qods Force.  And under subsection F, anyone that aids and abets the Qods Force, the United States also has jurisdiction over.  So even if the Court believes that there's not sufficient allegations for foreign commerce, there is certainly sufficient allegations

for aiding and abetting the Qods Force's unlawful activity. And there's no argument that they've made that the Qods Force is not subject to the jurisdiction of the U.S. courts.

**THE COURT:**  And is that based on the foreign affairs and national security powers of the United States as opposed to the commerce power?

**MR. HUDAK:**  I believe that's correct, Your Honor. And we go through that analysis describing the different powers the United States has to regulate that conduct on pages 13 through 16 of our brief.  And that's including to protect the national security of the United States.  And there's actually a case citation from the In Re: sealed case -- and I believe that's from the circuit here, discussing a similar statute.  I believe that's the drug trafficking statute.  But I think there's also another case that we cite that talks about how -- that this is not just an exercise of foreign commerce clause authority, but national securities authorities as well.

**THE COURT:**  So what I'd like to do is I want to go back and just take a look at a couple of these things, and I'm just going to come back out then and just give you a ruling from the bench on this so we can move the case along. So let me go back and look at a couple of things, and I'll come back and give you a ruling shortly.

(Recess taken at 11:21 a.m.)

(Proceedings resumed at 11:39 a.m.)

**THE COURT:**  So thank you all, the briefs and the argument in this case were helpful.  I've gone back and looked at some of the materials that you mentioned during the arguments, and I'm prepared to give you my ruling now. The ruling I'm going to give you is both for the 21-3234 matter and the 21-2817 matter.  The motions track each other, and the Court's reasoning is the same for both cases.

The government, in its verified complaint, brings one in rem claim in each of the two cases pursuant to 18 U.S.C. 981(a)(1)(G)(i) seeking forfeiture.  That statute covers two categories of property relating to any individual, entity or organization engaged in planning or perpetrating any federal crime of terrorism, as defined in section 2332b(g)(5), against the United States, citizens or residents of the United States or their property; and all assets, foreign or domestic, of such individual, entity or organization, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization.

The government here has alleged alternative theories under section 981(a)(G)(i) -- or (a)(1)(G)(i).  The first theory is that the assets at issue here are of an individual, entity or organization engaged in the planning or perpetrating any federal crime of terrorism against the

United States, or a citizen or residents of the United States; and alternatively, that the assets at issue are those of a foreign or domestic -- that the assets at issue are -- let me back up.

That the assets at issue afford a person a source of influence over any such entity or organization. And then property that satisfies either of those two categories would be subject to forfeiture. The term federal crime of terrorism means an offense that, A, is calculated to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against the government; and B, is in violation of one of the enumerated offenses. And here, the alleged enumerated offense is a violation of 18 U.S.C. section 2339B(a)(1). And under that statute, whoever knowingly provides material support or resources to a Foreign Terrorist Organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years or both; and if the death of any person results, shall be imprisoned for a term of years or for life -- for any term of years or life.

And the statute further provides that to violate that paragraph, a person must have knowledge that the organization is a Designated Terrorist Organization; that the organization is engaged in or engages in terrorist activity; or that the organization has engaged in or engages

in terrorism.  The term terrorist organization means an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act.

So for present purposes, the Court takes the allegations of fact contained in the complaints as true for purposes of resolving a motion to dismiss.  And taking those allegations as true, the facts are as follows.  This case arises out of an FBI and Homeland Security investigation involving Iran's transportation and sale of oil for the benefit of various sanctioned Iranian entities.  The government maintains that the defendant property -- and that's the petroleum products at issue here, which originated at an oil terminal in Iran, were transferred for the benefit of the National Iranian Oil Company, the National Iranian Tanker Company, the Islamic Revolutionary Guard Corps, and the Qods Force, all of which are designated by the Department of Treasury's Office of Foreign Asset Control, or OFAC.

The IRGC is a branch of the Iranian Army whose conduct is to defend the country's political system.  The Qods Force is a branch of the IRGC that specializes in unconventional warfare and military intelligence operations.  OFAC has designated both the IRGC and Qods Force, pursuant to Executive Order 13244, and the State Department has designated both entities as Foreign Terrorist Organizations?

The complaint maintains that the IRGC and its Qods Force have close ties to Iran's oil industry.  For example, it alleges that the Qods Force official Rostam Ghasemi, who served as Iran's minister of petroleum from 2011 to 2013, manages a group of individuals, shipping and oil companies and vessels to sell Iranian crude, condensates and gas/oil.  In 2019, OFAC designated Ghasemi, and in 2020, Ghasemi assumed a portion of the former IRGC-Qods Force commander Qassem Soleimani's role in facilitating shipment of oil and petroleum products for the financial benefit of the Qods Force following Soleimani's death.  According to OFAC, the Iranian Ministry of Petroleum has been used by individuals at the highest levels of the Iranian regime to facilitate the Qods Force's revenue generation scheme.

OFAC accordingly designated the Ministry of Petroleum in 2020.  The ministry oversees the NIOC which is responsible for the exploration, production, refining and export of oil and petroleum products in Iran.  OFAC has found that NIOC helps finance the Qods Force and its terrorist proxies by supplying oil to be sold.  In 2012, the Treasury Department submitted a report to Congress finding that NIOC was an agent or affiliate of the IRGC, and OFAC designated NIOC in 2020 for materially supporting the Qods Force.

The NITC is a subsidiary of the NIOC, and it's

responsible for the transportation of Iranian crude exports. OFAC has found that NITC plays a significant role in deals that create revenue for the Qods Force and Hezbollah, and has provided vessels for use in the Qods Force's oil operations.  Like the NIOC, OFAC designated the NITC in 2020 for providing material support to the Qods Force.  OFAC has observed that the IRGC-Qods Force deliberately utilizes a complex network of intermediaries, including dozens of ship managers, vessels and facilitators, for the purpose of obfuscating its involvement in selling Iranian oil.

And I should say just for ease of presentation, I'm not giving you every quotation or citation as I go through this.  But many of the things that I'm referring to here are, in fact, quotations from government reports or the complaint.

For example, just in the spring of 2019, one Qods Force led network transported nearly 10,000,000 barrels of crude oil, which taken together, sold for over a half billion dollars.  And OFAC has found that NIOC and the NITC provide the oil and tankers for sale of Iranian oil for the Qods Force.  OFAC has further found that the IRGC uses the proceeds from its involvement in the oil industry and other sectors of the Iran economy to support the IRGC's full range of nefarious activities -- and I am quoting here, "including the proliferation of weapons of mass destruction, and their

means of delivery, support for terrorism, and a variety of human rights abuses at home and abroad." And that's from paragraph 15 of the complaint.

One can also refer to the Treasury Department Targets International Network Supporting Iran's Petrochemical and Petroleum Industries, which is a Department of Treasury release from January 23rd, 2020. Then Secretary of the Treasury Mnuchin noted that: "Iran's petroleum" -- I'm sorry, "Iran's petrochemical and petroleum sectors are primarily sources of funding, for the Iranian regime's global terrorist activities enable it persistent use of violence against its own people." And that, again, was a quote.

The property at issue here was allegedly loaded onto a vessel known as the M/T Stark I, which has been designated -- especially designated -- I'm sorry, which is a specially designated nationally blocked person list by OFAC. On October 15th, 2020, the Stark I allegedly repainted its deck in Iran in an apparent attempt to disguise the vessel and to avoid detection by satellite imagery. A couple of weeks later, the Stark I pulled into an anchorage at Kharg Island in Iran, and allegedly loaded the defendant property at that point in time.

On November 3rd, the Stark I then transferred approximately 733,876 barrels of Iranian crude onto the M/T

Arina via ship-to-ship transfer.  While onboarding or lightering the cargo, the Arina disabled its automatic identification system which transmits a ship's position with the time stamp.  And the Arina allegedly engaged in similar transactions in the past.

On August 26, 2021, the Arina transferred, or lightered, a portion of its cargo to the M/T Nostos in a ship-to-ship transfer off the coast of Cyprus.  Afterwards, there were approximately 513,083 barrels of Iranian crude left on the Arina.  And that is the property at issue in the 21-cv-3234 case.  And the Iranian crude oil that was lightered to the M/T Nostos is the property at issue in the 21-2817 case.

Aspan Petrokimya Co., which I'll refer to as Aspan, filed a claim in both cases for the property at issue.  Aspan is a commodities trading company founded and incorporated in the Republic of Turkey in 2020.  It claims to hold the title to and interest in the defendant property. It contends that in 2020, it reached an arm's length agreement with a company known as Overseas Oil and Gas, LLC, which is allegedly an entity founded and incorporated in Oman, for purchased of crude oil.  And according to Aspan, in November of 2020, Overseas issued an invoice to Aspan for the sale of the 733,876 barrels of crude oil.  And that invoice purportedly was set for delivery for the port of

Sohar in Oman.  It included the apostille of Oman's Ministry of Foreign Affairs, and the attestation of the Oman Chamber of Commerce and Industry.  Aspan claims that a bill of lading signed by the master of the Arina names Aspan as the consignee of the oil that was loaded in Oman.  Aspan also maintains that it had title to the crude oil aboard the Nostos after the Arina transferred some of its barrels to that vessel.

Aspan claims that it entered into a sale and purchase agreement with Emirates Petroleum and Logistics, Limited, a Turkish company involved in wholesale petroleum, for the sale of the crude oil on the Arina and the Nostos. And before the transfer could take place, the Department of Justice notified the Arina and the Nostos that warrants had been issued for seizure of the cargo, and directed them to come to the United States.

On October 30th, 2021, Aspan and three other claimants filed an ex parte application for an injunction in the High Court of Justice of England and Wales against the managers and owners of the vessels seeking to enjoin them from navigating to the United States.  And that same day, the High Court granted the application and ordered an injunction mandating that the ships remain in European ports.  On November 12th, 2021, the High Court discharged that injunction with the understanding that Aspan would have

the opportunity to challenge the forfeiture before this Court.

Aspan's counsel has informed the United States Government the Aspan holds the legal title to the oil on both ships, and that it intends to contest forfeiture. Aspan states that the U.S. Government sold the oil without providing notice to it.  Aspan has moved to dismiss the complaint in both cases pursuant to Rule 12(b), as well as the Supplemental Rule G(8)(B)(i), and the government opposes that motion.

Forfeiture actions in rem, pursuant to federal statute, are subject to supplemental rules -- the supplemental rules of civil procedure for admiralty or maritime claims and arrest and forfeiture actions.  And the Federal Rules of Civil Procedure apply as well, except to the extent that they conflict with the supplemental rules. Supplemental Rule G(2) does require that a complaint for forfeiture in rem meet the following requirements:

It must be verified, as is the complaint here; it must state the grounds for subject-matter jurisdiction in rem over the defendant property and venue; it must describe the property with reasonable particularity, which it has done here; if the property is tangible, it must state its location of when the seizure occurred, and if different, its location when the action was filed -- which, again, is not

at issue now.  It must identify the statute under which the forfeiture action is brought, which is the case here.  And it must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  Ultimately, the burden of proof is on the government to establish by a preponderance of the evidence that the property is subject to forfeiture. And I'm citing there to 18 U.S.C. section 983(c)(2).

At the pleading stage, however, the complaint must only, quote, state the circumstances from which the claim arises with such particularity the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation on the facts and frame a responsive pleading.  And that's Federal Rules of Civil Procedure, Supplement R -- Supplemental Rule G, advisory committee notes.  And it's also referenced in United States vs. One Gulfstream G-V Jet Aircraft at 941 F.Supp.2d, 1 at 14.

Under the advisory committee note -- I'm sorry, the advisory committee note also observes that the complaint state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  And under section 983(a)(3)(D), no complaint may be dismissed on the ground that the government did not have adequate evidence at the time the complaint was

filed to establish the forfeitability of the property. Indeed, the government may use evidence gathered after the filing of the complaint for the forfeiture to meet its burden.  And that's section 983(c)(2).

A claimant who establishes standing to contest forfeiture may move to dismiss, which is what's taking place here.  And as is the case under Rule 12(b), the plaintiff's factual allegations are presumed true, and should be liberally construed in favor of the plaintiff.  And that's from One Gulfstream, again, at 941 F.Supp.2d at 14.  And as with the other Rule 12-4 motions, factual challenges are generally not allowed.  And this matter does not involve any factual challenge, so that's not an issue for the Court at present.

So turning to the analysis.  The defendant's property must either belong to an entity planning or perpetrating a federal crime of terrorism or must afford someone a source of influence over such an entity.  To qualify as a federal crime of terrorism, the relevant offense must both be calculated to influence or affect the conduct of the government by intimidation and coercion or to retaliate against the government.  And it would have to violate one of the enumerated statutes.  And as I've mentioned, here the enumerated statute is 18 U.S.C. section 2339B.

Aspan argues that the complaint fails to establish that NITC, the alleged owner of the property, violated section 2339B because the complaint fails to allege that NITC gave material support to the IRGC or the Qods Force, and fails to establish extraterritorial jurisdiction with respect to the alleged violation of section 2339B.

Aspan further argues that the complaint failed adequately to allege that the offense was calculated to influence, affect or retaliate against the United States Government.  And, finally, it argues that the complaint fails to meet the heightened pleading standard that applies in forfeiture actions.  I want to address each of those in turn.

Although it's not addressed by the parties in their briefs, I just want to briefly mention standing. Before a claimant can move to dismiss, the claimant has to adequately allege standing, which I conclude that Aspan has done here.  As you all know, the irreducible constitutional minimum for standing is a showing of an injury-in-fact that is both concrete and particularized, and actual or imminent, not conjectural or hypothetical; a causal connection between the injury and the conduct complained of; and must also show that it's likely, as opposed to merely speculative, that the injury could be redressed by a favorable decision.  I probably don't even need to cite it, but that's the Lujan

case as I'm sure you all know.

Here, the government doesn't challenge standing, and I conclude that Aspan has, in its claim, adequately alleged standing which is all that is necessary at this point in the process.  In particular, Aspan claims that it reached an agreement with the Omani company Overseas for the oil, and that Aspan was named as the consignee of that oil.  Aspan maintains that it retained title for the crude oil on both the Arina and the Nostos after the ship-to-ship transfer.  And it claims that the sale agreement with the petroleum wholesaler -- claims that it had a sale agreement with the petroleum wholesaler for the oil at issue.  It therefore has adequately alleged an injury-in-fact that would be redressed through a favorable ruling in this case.

So I want to turn now to the arguments that we've discussed in detail this morning and that are made in the briefs.  The first argument that Aspan makes is that the complaint fails adequately to allege that NITC has violated section 2339B by providing material support to the IRGC and the Qods Force.  Section 2339B prescribes the knowing -- prescribes knowingly providing material support or resources to a Foreign Terrorist Organization, or attempting and conspiring to do so.  And as I mentioned previously, to violate that section, a person must have knowledge that the organization is a Designated Terrorist Organization; that

the organization is engaged or engages in terrorist

activity; or that the organization is engaged in or engages

in terrorism.  And here, I don't think there's any dispute

that the IRGC and the Qods Force have both been designated

by the United States as terrorist organizations.  Aspan

doesn't challenge that, but instead argues that the

complaint does not plead, quote, any facts that establish

the NITC's provision of material support or resources to the

IRGC or the Qods Forces.  And as I indicated earlier, I

disagree with that reading of the complaint.

        The term material support or resources means any

property, tangible or intangible, or services including

currency or material instruments.  And the complaint

contains numerous factual allegations relating to the NITC's

provision of support to the IRGC and Qods Force.  For

example, both complaints allege that the NITC provided

vessels for use in Qods Force oil operations, and has used

front companies to obscure its involvement in such oil

shipments.  The complaints also allege that the NITC has

been designated by OFAC, and cites OFAC's conclusion that

the NITC has materially assisted, sponsored and provided

financial, material or technical support for, or goods or

services in support of, the Qods Force.  And that it has

played a significant role in oil deals used to generate

revenue for the Qods Force.  And the complaint includes

numerous government documents which are attached to the government's opposition which provide greater detail and which are incorporated by reference into the complaint.

The Court concludes that the materials cited in the complaint and incorporated by reference provide ample allegations with respect to the NITC's provision of material support to the IRGC and to the Qods Force.  Among other documents, the complaint cites OFAC's explanation for designating the NITC which explains in some details the NITC's role in financing the IRGC and the Qods Force.  The press release claims that in the spring of 2019 alone, an IRGC-Qods Force led network employed more than a dozen NITC vessels to transport nearly 10,000,000 barrels of crude oil, mostly destined for the Assad regime, which collectively sold for the equivalent of more than a half billion dollars. It also claims that the NITC personnel worked with the IRGC-Qods Force on the loading of oil provided by NIOC, and that the NITC managing director worked with Hezbollah on logistics and pricing of shipments to Syria.

It further states that the NITC managing director worked with the Syrian affiliated regime Quatirji group and a senior Qods Force official to facilitate the shipment of millions of dollars of oil by the NITC.  Other documents are to like effect, and I'm convinced that the complaint and the incorporated documents amply support the allegation -- which

is simply an allegation at this point, that the NITC has provided and provides material support to a terrorist organization or multiple terrorist organizations in violation of section 2339B.

The claimant argues that the government has to plead more than that; that the government actually has to plead that the property at issue here was materially used to support the Qods Force and/or IRGC or some other terrorist organization; and that it's not enough to simply allege that the NITC itself engaged in providing material support more generally to the Qods Force and IRGC. I disagree with that reading of the statute. The statute says that all assets, foreign or domestic, of any individual, entity or organization engaged in planning or perpetrating any federal crime of terrorism against the United States, citizens or residents of the United States or their property, is subject to forfeiture.

And here, the complaint clearly alleges that the assets at issue, the oil, is property of the NITC. It clearly alleges that the NITC is an organization engaged in planning or perpetrating a federal crime of terrorism; that is, the provision of material support against the United States, or citizens or residents thereof. Mr. Satin argued that there's not a sufficient basis in the complaint to conclude that any material support provided by the NITC is

against the United States, its citizens or residents of the United States or their property.  I think that, first and foremost, is based on what I believe is an overly narrow and an incorrect reading of the statute.  And it's based on the contention that there has to be a showing that this particular oil, or this particular property, was sold for the purposes of providing material support for terrorist acts that are directed at the United States.  That, I don't think, is the correct reading of the statute.

There are other portions of the statute which do require that the property itself be involved in the criminal conduct.  That's not the way that section 981(a)(1)(G)(i) reads, it's written much more expansively.  I understand that the complaint does include allegations that arguably could be read to take the narrower view.  But I don't think the fact that the complaint alleges perhaps more than is necessary is a basis for dismissing the complaint.  And I also think that Mr. Hudak's reading of the complaint is a tenable one, which is consistent with the broader reading of the statute -- which I believe is correct, in that no one has explained to me why it's not correct today.

But also independent of that, to the extent that Mr. Satin argues that there's not evidence that the NITC -- I should strike that.  That there are not allegations in the complaint sufficient to establish that the NITC provides

material support to the Qods Force or the IRGC for purposes of terrorism against the United States, I disagree with that.  I think that the reports included by reference as well as the allegations in the complaint sufficiently establish or sufficiently allege that the IRGC and Qods Force are involved in acts of terrorism, and that providing material support through many millions of dollars of oil sales that benefits the IRGC and Qods Force does provide material support for the terrorist acts against the United States.

The complaint also includes a reference to an alternative basis for seizure under -- for forfeiture, I'm sorry, an alternative basis for forfeiture under 981(a)(1)(G)(i), and that is that property can be seized if it affords a person a source of influence over an entity that is engaged in acts -- in planning or perpetrating any federal crime of terrorism against the United States.  I don't think I need to reach that issue today, both because it's an alternative theory, and I've already concluded that the principal theory the government relies on is sufficient. And to the extent that there is a debate about whether the allegations in the complaint are sufficient with respect to the alternative source of influence theory, that was not adequately raised in the motion to dismiss to preserve that argument.

In any event, I do think that if the government does replead -- which I'll get to in a moment, that it may want to elaborate on what its theory is there. But I don't think the question is properly teed up for me at this point as to whether the government has alleged enough or whether that theory is available here. I know there's a question about whether the word "person" refers to a natural person or it could also include a company. That issue is not briefed or before the Court at this point, and so I won't express an opinion on that question.

In its reply brief, Aspan does stress its substantial connection argument. It shifts the focus of its argument from its opening brief, which was largely about whether there were adequate allegations of material support, to arguing that the complaint fails to plead a substantial connection between the defendant property and the alleged violation of 2339B. In support of this, the claimant relies on section 983(c)(3). That provision says that any suit or action brought under any civil forfeiture statute for the civil forfeiture of any property, if the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense or was involved in the commission of a criminal offense, the government shall establish there was a substantial connection between the property and the offense. And for

the reasons that I've already given, I don't think that provision is necessarily applicable here, because I don't think the government's theory of the case needs to turn on the use of the property at issue here in committing an offense.

I've already explained why I think that section 981(a)(1)(G)(i) -- which is any property, regardless of whether that property is actually used in the offense, that it's the property of an entity or organization that is engaged in planning or perpetrating any federal crime of terrorism against the United States.  And the complaint, for the reasons I've given, does allege that the NITC has and is engaged in planning or perpetrating any federal crime of terrorism against the United States.  Therefore, any of the property of the NITC would be subject to forfeiture regardless of whether the property was involved -- the property itself was used for purposes of generating material support for a terrorist organization.

In response to this, Mr. Satin argues that there is a nexus requirement, because 981(a)(1)(G)(i) uses the present tense and refers to an organization engaged in or perpetrating any federal crime rather than using the past tense.  I don't -- I agree that it is in the present tense, but I think the allegations in the complaint are sufficient to allege that the NITC is currently engaged in providing

material support to the IRGC and the Qods Force.  I don't think anyone can plausibly read the use of the present tense to mean that the assets or property that is seized has to be used in committing the crime at issue.  And I think that's fairly obvious from the fact that there are other provisions of the civil forfeiture and criminal forfeiture provisions in Title 18 that make it that Congress knows how to say it when it wants to tie the actual property to the criminal conduct at issue.  And it did not do so in this context.  I am not persuaded by the argument, and so I reject the claimant's substantial connection argument.

The claimant does raise one additional argument that I think has more force to it, although perhaps not quite in the way they raise it.  They argue that the complaint does not establish extraterritorial jurisdiction over the alleged section 2339B offense.  I am persuaded by Mr. Hudak's argument that the jurisdictional element of a violation of 2339B does not go to this Court's subject-matter jurisdiction, but rather goes to the question of whether the government has adequately pled the elements of the offense.  And here, I think the government comes close on this.  But I think that it would be better to more clearly plead those elements that establish the jurisdictional nexus.

The government has pointed to two provisions that

it thinks establish the jurisdictional nexus for purposes of the 2339B offense, and those are found in section 2339B(d). And the first is (d)(1)(E) which applies to offenses that occur in or affect interstate or foreign commerce. And for the reasons that I've given, I think that it has to do more than affect commerce, or even commerce between foreign -- wholly foreign states or foreign entities, it doesn't have any effect on U.S. commerce. And Mr. Hudak pointed to some various reports. I've looked quickly at those, and I don't really see how the reports that are incorporated establish, at least with much detail, that the NITC and NIOC's sale of Iranian crude oil affects foreign commerce except that it has some effect on the United States. I don't think that's actually a terribly controversial proposition if you're talking about selling hundreds of millions of dollars, if not billions of dollars, of oil. And I think that is something that could relatively easily be established. But I think the claimant's correct that it's not actually alleged in the complaint, at least I didn't see it on review of the attachments. It's possible it's in there somewhere, but I didn't see it and no one has pointed me to it.

Alternatively, Mr. Hudak said that we could rely on (1)(F) which applies to any offender who aids or abets any person over whom jurisdiction exists under this paragraph. But when I go back and look at the rest of

(d)(1), I don't see anything in there that is more encompassing. And we talked a little bit about whether there might be jurisdiction pursuant to Congress' foreign affairs and national security powers. But as you run through the (d)(1) list, nothing on that list seems to turn on -- the first is the offender is a national of the United States. The second is the offender is a stateless person who is a resident in the United States. The third is the offender is brought into or found in the United States. The next one is the offense occurs in whole or in part within the United States. And then the final -- the next one that we come to is (e) which is the offense occurs in or affects interstate commerce.

So for that reason, I think it is appropriate for me to dismiss the complaints without prejudice just to provide the government with the opportunity to plead those facts with respect to the jurisdictional requirement under 2339B, understanding that those don't go to this Court's subject-matter jurisdiction, but are simply an element of the offense. And I think I have addressed the other issues at this point, so what I'm going to go ahead and do is dismiss both of the complaints without prejudice for failure to plead the jurisdictional element of the 2339B offense.

Mr. Hudak, you can tell me how much time you'd like to file?

**MR. HUDAK:** So 45 days would be preferable, Your Honor, given everything else that's going on. I'm assuming in granting us leave to replead, if we want to include other allegations to bolster other portions of the complaint or perhaps to address other pieces of the Court's opinion or facts that have been introduced by Aspan's claim, that our leave would be encompassing those as well?

**THE COURT:** I was actually going to turn to that as well, which I was going to say that given the fact that you're going to be repleading, I do think it would be preferable to add some additional substance on some of the points you heard a fair amount of today from Mr. Satin. In particular, I think that if the government wants to rely on the source of influence theory, having greater clarity on what that theory is in the complaint would be helpful. But also just to avoid frankly having to go through this exercise a second time with some additional allegations with respect to whether the government's relying on the broader reading of the statute that I've articulated or on a narrower reading of the statute; any further allegations with respect to the connection of the NITC to the provision of material support for acts of terrorism; the calculated to influence issue.

I mean, you heard the arguments raised. If there's anything you can do to avoid having to replay this

where you have the facts to allege it better, to do that rather than have to go through this exercise a second time.

**MR. HUDAK:**  Yes, Your Honor.  Thank you very much.

**THE COURT:**  Any objection to 45 days?

**MR. SATIN:**  No, Your Honor.

**THE COURT:**  Okay.  I'm not going to dismiss the case, either case, I'm just going to dismiss the two complaints without prejudice.  I'm going to give the government -- why don't we set a date certain.  Is May 1st sufficient?

**MR. HUDAK:**  Yes, Your Honor.

**THE COURT:**  So May 1st for the amended complaints.

Mr. Satin, was there something else you wanted to raise?

**MR. SATIN:**  The timing of our response (inaudible)...

**THE COURT:**  You need to be at a microphone so you're on the record.

**MR. SATIN:**  I was going to address the timing of when our response would be.  We can talk to the government to arrange it.

**THE COURT:**  If you want to just file something with me, that would be fine.  I'm happy to have you agree on something today, but if you need to talk and want to just submit something to me with a proposed date, that's fine

also.

            MR. SATIN:  I'm imagining we'll want 45 to 60 days
to determine how we're going to respond, whether in an
answer or another motion, but we'll see.

            THE COURT:  Should I just specify some period
today?  I'm happy to do that.

            MR. HUDAK:  That's fine, Your Honor.

            THE COURT:  So just tell us whether you want 45 or
60 days?

            MR. SATIN:  We'll take 60, and if we can get it in
earlier, that would be better.

            THE COURT:  So how about if I give you until July
3rd?

            MR. SATIN:  That's fine.

            THE COURT:  Okay.  Anything else?

            MR. HUDAK:  No, Your Honor.

            THE COURT:  And I think that -- I'm not sure it's
part of this case, but I don't intend anything I do today to
undermine or affect the order of seizure of the property.
Okay, thank you all.

       (Proceedings adjourned at 12:26 p.m.)

C E R T I F I C A T E

I, **Jeff M. Hook, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

_April 23, 2023_                    _____

**DATE**                         **Jeff M. Hook**

**1**

**10,000,000 [2]**  58/17 68/13
**10:05 [1]**  1/22
**11 [1]**  51/5
**11:21 [1]**  53/25
**11:39 [1]**  54/1
**11th [1]**  39/21
**12 [4]**  21/25 51/7 62/8 64/7
**12-4 [1]**  64/11
**12:26 p.m [1]**  79/21
**12th [1]**  61/24
**13 [1]**  53/10
**13244 [1]**  56/24
**14 [3]**  37/15 63/18 64/10
**15 [1]**  59/3
**15th [1]**  59/18
**16 [2]**  52/3 53/10
**16th [1]**  2/8
**17 [1]**  1/12
**18 [9]**  4/6 8/12 38/13 52/3 54/10 55/14 63/8 64/24 74/7
**1:21-cv-2817 [1]**  1/16
**1:21-cv-3234 [1]**  1/5
**1st [2]**  78/9 78/12

**2**

**20 [1]**  55/18
**20001 [1]**  2/25
**20006 [1]**  2/9
**2011 [1]**  57/4
**2012 [1]**  57/20
**2013 [1]**  57/4
**2019 [3]**  57/7 58/16 68/11
**2020 [10]**  21/22 57/7 57/16 57/23 58/5 59/7 59/18 60/17 60/19 60/23
**2021 [4]**  21/19 60/6 61/17 61/24
**2023 [1]**  1/12
**20530 [1]**  2/4
**21-2817 [4]**  3/3 4/1 54/7 60/13
**21-3234 [3]**  3/3 4/1 54/6
**21-cv-3234 [1]**  60/11
**219 [1]**  56/3
**2332a [1]**  36/23
**2332b [4]**  23/16 24/10 24/13 54/15
**2339 [2]**  36/23 48/15
**2339B [23]**  4/14 8/13 17/11 20/23 20/25 24/5 24/12 36/24 38/13 55/14 64/25 65/3 65/6 66/19 66/20 69/4 72/17 74/16 74/18 75/2 75/2 76/18

**76/23**
**23rd [1]**  59/7
**2461 [1]**  37/16
**25 [2]**  14/11 14/25
**26 [3]**  8/7 34/6 60/6
**27 [3]**  26/24 35/7 46/15
**28 [1]**  37/16
**2817 [5]**  1/16 3/3 4/1 54/7 60/13

**3**

**30th [1]**  61/17
**3234 [5]**  1/5 3/3 4/1 54/6 60/11
**333 [1]**  2/24
**3rd [2]**  59/24 79/13

**4**

**45 [4]**  77/1 78/4 79/2 79/8
**4700-C [1]**  2/24

**5**

**513,083 [1]**  60/9
**522 [1]**  37/16

**6**

**60 [3]**  79/2 79/9 79/10
**601 [1]**  2/3

**7**

**733,876 [2]**  59/25 60/24

**9**

**900 [1]**  2/8
**9189952 [2]**  1/7 3/5
**9258014 [2]**  1/18 3/8
**941 [2]**  63/17 64/10
**981 [18]**  4/6 6/21 9/21 13/16 19/18 26/2 26/18 31/6 33/22 33/22 34/22 44/23 54/11 54/22 70/12 71/14 73/7 73/20
**983 [13]**  9/25 9/25 11/5 11/6 12/4 19/18 19/24 19/25 33/13 63/8 63/23 64/4 72/18

**A**

**a.m [3]**  1/22 53/25 54/1
**abets [2]**  52/22 75/23
**abetting [2]**  39/6 53/1
**abettors [2]**  38/14 39/10
**able [5]**  12/1 15/13 63/4 63/12 63/22
**aboard [2]**  30/14 61/6
**above [2]**  36/6 80/5

**above-entitled [1]**  80/5
**abroad [1]**  59/2
**absolutely [1]**  13/21
**absurd [1]**  14/2
**abundantly [1]**  12/25
**abuses [1]**  59/2
**accept [1]**  43/3
**according [4]**  6/2 41/4 57/11 60/22
**accordingly [1]**  57/15
**act [16]**  10/21 14/17 16/21 29/23 30/13 31/9 31/11 32/15 32/20 33/2 33/17 33/24 37/17 47/5 47/7 56/3
**action [7]**  1/5 1/15 35/25 36/4 62/25 63/2 72/19
**actions [3]**  62/11 62/14 65/12
**actively [1]**  39/25
**activities [14]**  6/15 23/7 23/8 32/4 38/23 39/4 39/7 39/14 39/16 40/4 43/7 51/15 58/24 59/11
**activity [4]**  4/13 53/1 55/25 67/2
**acts [12]**  9/20 14/20 15/14 15/16 48/22 49/22 49/24 70/8 71/6 71/9 71/16 77/22
**actual [6]**  7/7 18/21 27/15 28/20 65/20 74/8
**actually [13]**  6/7 6/21 13/4 27/7 34/7 37/6 51/25 53/12 69/6 73/8 75/14 75/18 77/8
**add [5]**  15/11 23/19 23/22 46/3 77/11
**adding [1]**  15/11
**additional [3]**  74/12 77/11 77/17
**address [6]**  5/3 12/19 12/20 65/12 77/5 78/19
**addressed [4]**  28/19 35/9 65/14 76/20
**addressing [1]**  6/6
**adequate [2]**  63/25 72/14
**adequately [11]**  15/13 41/18 42/1 44/10 65/8 65/17 66/3 66/13 66/18 71/24 74/20
**adjourned [1]**  79/21
**admiralty [1]**  62/13
**advances [1]**  29/21
**advisory [3]**  63/15 63/19 63/20

**affairs [3]**  53/5 61/2 76/4
**affect [16]**  17/12 24/2 24/7 24/15 38/5 39/4 42/8 42/17 42/24 51/25 55/10 64/20 65/9 75/4 75/6 79/19
**affecting [1]**  40/5
**affects [6]**  48/16 48/23 50/12 52/14 75/12 76/12
**affiliate [1]**  57/22
**affiliated [1]**  68/21
**afford [3]**  34/2 55/5 64/17
**afforded [1]**  36/2
**affording [4]**  26/16 31/1 41/15 54/18
**affords [4]**  29/23 40/25 41/22 71/15
**Afghanistan [1]**  39/20
**Africa [1]**  39/20
**afterwards [2]**  19/12 60/8
**again [28]**  14/7 22/2 23/18 25/25 29/5 32/23 34/15 35/7 35/9 36/6 37/22 38/18 38/20 39/11 40/19 40/20 41/8 41/17 42/11 42/22 47/17 48/15 49/17 51/20 52/17 59/12 62/25 64/10
**against [56]**  4/12 4/16 5/9 5/12 5/13 7/1 7/19 9/13 13/15 13/19 14/13 14/21 15/6 15/15 16/3 16/5 16/7 16/11 16/16 16/22 17/1 17/5 17/6 17/13 17/19 17/24 18/7 23/2 23/6 23/9 23/16 24/2 24/8 26/5 40/2 41/19 42/10 42/13 42/24 48/22 49/24 54/15 54/25 55/11 59/12 61/19 64/22 65/9 69/15 69/22 70/1 71/2 71/9 71/17 73/11 73/14
**against government [1]**  24/8
**agent [1]**  57/22
**agree [2]**  73/23 78/23
**agreement [5]**  60/20 61/10 66/6 66/10 66/11
**ahead [1]**  76/21
**aid [1]**  7/10
**aiders [2]**  38/14 39/10
**aiding [2]**  39/6 53/1

**A**

aids [2]   52/22 75/23
Aircraft [1]   63/17
Al [1]   39/19
allegation [12] 15/6 17/4 18/11 23/17 28/8 35/8 35/8 35/9 41/11 48/9 68/25 69/1
allegations [35] 20/21 20/22 23/19 30/11 32/2 33/1 33/6 36/7 38/2 38/9 39/12 39/18 39/22 41/2 41/21 42/25 43/5 43/10 45/4 52/24 52/25 56/5 56/7 64/8 67/14 68/6 70/14 70/24 71/4 71/22 72/14 73/24 77/4 77/17 77/20
allege [20]   5/18 6/14 19/23 34/6 36/1 37/25 38/9 39/13 44/11 65/3 65/8 65/17 66/18 67/16 67/19 69/9 71/5 73/12 73/25 78/1
alleged [33]   4/14 5/10 5/13 7/24 8/2 15/21 16/8 17/3 18/14 18/19 19/22 23/3 24/1 24/16 25/1 34/18 45/17 47/25 49/2 49/4 50/17 50/17 50/18 54/21 55/13 65/2 65/6 66/4 66/13 72/5 72/16 74/16 75/19
allegedly [6]   26/22 59/14 59/18 59/22 60/4 60/21
alleges [12]   15/25 19/23 21/4 21/8 21/10 21/11 29/6 38/18 57/3 69/18 69/20 70/16
alleging [1]   37/16
allowed [1]   64/12
almost [2]   6/8 29/9
alone [1]   68/11
along [1]   53/22
alternative [8] 38/12 40/14 41/20 54/21 71/12 71/13 71/19 71/23
alternatively [2] 55/2 75/22
although [6]   9/23 11/23 28/22 51/21 65/14 74/13
Ambassador [1]   40/1
amended [1]   78/12
AMERICA [4]   1/3 1/13 3/3 3/6

Americans [1]   18/4
Among [1]   68/7
amount [1]   77/12
ample [1]   68/5
amply [1]   68/25
analogy [1]   18/18
analysis [3]   52/3 53/8 64/15
anchorage [1]   59/21
and/or [1]   69/8
answered [2]   11/18 12/8
anxious [1]   46/8
apologize [1]   26/13
apostille [1]   61/1
apparent [1]   59/19
appeal [1]   45/22
APPEARANCES [1]   2/1
appears [2]   35/10 35/11
applicable [1]   73/2
application [2] 61/18 61/22
applied [1]   45/1
applies [9]   10/2 10/3 11/17 12/4 19/25 22/19 65/11 75/3 75/23
apply [4]   21/4 33/13 45/3 62/15
approach [1]   3/10
appropriate [2] 46/24 76/14
approximately [2] 59/25 60/9
area [3]   36/8 36/10 48/25
areas [1]   37/8
arguably [1]   70/14
argue [2]   4/15 74/14
argued [2]   33/11 69/23
argues [7]   65/1 65/7 65/10 67/6 69/5 70/23 73/19
arguing [1]   72/15
argument [39]   19/21 22/15 24/19 24/23 25/7 27/3 27/6 30/3 32/16 34/6 34/15 38/19 38/21 42/3 43/3 43/20 44/4 44/17 45/1 45/3 45/12 45/23 46/7 46/13 46/23 47/1 50/9 50/11 51/22 53/2 54/3 66/17 71/25 72/12 72/13 74/10 74/11 74/12 74/17
arguments [5]   35/11 40/15 54/5 66/15 77/24
ARINA [21]   1/6 3/4 4/10 8/7 18/15 26/24 28/6 30/14 48/4 48/6 50/16 60/1 60/2 60/4 60/6 60/10 61/4 61/7

61/12 61/14 66/9 63/11
arises [2]   56/8 63/11
arm's [1]   60/19
Army [1]   56/19
around [1]   49/24
arrange [1]   78/21
arrest [1]   62/14
articulated [2] 31/21 77/19
aside [1]   32/17
ASPAN [29]   1/10 1/21 3/6 3/9 29/20 60/14 60/15 60/16 60/22 60/23 61/3 61/4 61/5 61/9 61/17 61/25 62/4 62/6 62/7 65/1 65/7 65/17 66/3 66/5 66/7 66/8 66/17 67/5 72/11
Aspan's [3]   52/18 62/3 77/6
Assad [2]   39/18 68/14
assert [1]   48/24
asset [13]   7/8 8/9 9/14 10/23 10/24 15/19 16/9 29/22 33/8 34/22 35/6 38/6 56/17
assets [31]   6/21 6/22 6/24 8/24 9/7 9/9 9/14 9/17 9/19 19/13 19/15 26/15 30/14 30/21 30/23 31/1 33/17 33/23 34/1 34/2 34/7 35/2 54/17 54/18 54/23 55/2 55/3 55/5 69/12 69/19 74/3
assisted [2]   21/11 67/21
associated [1]   28/6
assumed [1]   57/8
assuming [3]   38/16 46/24 77/2
attached [3]   41/12 51/7 68/1
attachments [1] 75/20
attacking [1]   17/23
attacks [3]   9/13 25/12 25/17
attempt [1]   59/19
attempted [3]   8/11 10/17 34/12
attempting [1] 66/22
attempts [1]   55/16
attestation [1] 61/2
Attorney's [2]   3/13 3/14
August [1]   60/6
August 26 [1]   60/6
authoritative [1] 36/10
authorities [10] 38/25 40/2 41/8

41/9 43/1 48/24 51/1 51/4 51/6 53/18
authority [2]   51/7 53/17
automatic [1]   60/2
available [1]   72/6
Avenue [1]   2/24
avoid [3]   59/20 77/16 77/25

**B**

back [18]   7/4 15/9 15/10 32/10 37/1 37/10 44/19 45/14 49/7 52/7 52/17 53/20 53/21 53/23 53/24 54/3 55/4 75/25
backstop [1]   41/17
backup [1]   30/10
Bankruptcy [1]   2/23
bare [1]   22/16
barrel [1]   52/14
barrels [6]   58/17 59/25 60/9 60/24 61/7 68/13
based [7]   20/6 20/11 23/10 23/12 53/4 70/3 70/4
basically [1]   51/9
basis [12]   4/13 33/1 36/2 36/11 36/12 36/24 38/12 41/20 69/24 70/17 71/12 71/13
battle [1]   25/13
become [1]   37/18
becomes [1]   37/17
begins [1]   30/21
behalf [3]   3/17 4/11 8/9
belief [3]   11/25 63/4 63/22
believes [3]   39/3 41/25 52/24
Bella [4]   28/13 36/14 47/17 48/6
belong [1]   64/16
bench [1]   53/22
benefit [3]   56/10 56/14 57/10
benefits [1]   71/8
better [3]   74/22 78/1 79/11
beyond [1]   36/6
big [1]   6/22
bill [1]   61/3
billion [2]   58/19 68/15
billions [1]   75/16
bit [7]   4/22 5/20 17/15 31/18 31/20 40/18 76/2
blocked [1]   59/17
Boasberg [2]   28/13 36/9
bolster [1]   77/4
Bolton [1]   40/1
bombings [1]   39/23

**B**

boned [1]   22/16
born [1]   27/4
both [21]   3/15 33/3
 44/22 45/1 45/2
 47/24 54/6 54/8
 55/18 56/23 56/25
 60/15 62/5 62/8
 64/20 65/20 66/9
 67/4 67/16 71/18
 76/22
branch [2]   56/19
 56/21
breathing [2]   27/15
 47/10
BRIAN [2]   2/2 3/12
brief [13]   35/12
 39/1 43/15 45/13
 45/19 45/23 46/4
 46/12 47/1 52/3
 53/10 72/11 72/13
briefed [1]   72/9
briefing [2]   31/10
 46/2
briefly [2]   43/17
 65/15
briefs [5]   37/1
 50/10 54/2 65/15
 66/17
bringing [2]   9/24
 40/22
brings [1]   54/9
broad [3]   8/5 20/19
 27/13
broader [6]   12/24
 19/24 27/16 47/9
 70/19 77/18
broadly [1]   8/18
brought [3]   63/2
 72/19 76/9
burden [10]   11/14
 11/15 11/19 12/1
 12/3 12/3 63/5 63/5
 63/22 64/4

**C**

calculated [10]
 17/12 24/1 24/6
 24/14 42/8 42/19
 55/9 64/20 65/8
 77/22
calling [2]   20/7
 20/8
came [1]   13/8
can [25]   12/19 14/9
 15/8 15/11 21/16
 23/21 25/22 27/16
 27/25 28/3 30/8
 30/17 32/9 46/6
 47/23 51/3 53/22
 59/4 65/16 71/14
 74/2 76/24 77/25
 78/20 79/10
cargo [7]   1/6 1/16
 3/4 3/7 60/2 60/7
 61/15
carried [1]   38/22
carry [1]   39/17
carrying [1]   40/1

case [34]   3/2 4/17
 9/17 10/9 11/13
 13/4 13/20 15/5
 17/9 18/12 20/23
 23/20 24/5 26/24
 35/18 42/11 46/24
 47/19 53/12 53/13
 53/15 53/22 54/3
 56/7 60/11 60/13
 63/2 64/7 66/1
 66/14 73/3 78/7
 78/7 79/18
cases [17]   4/4 18/3
 21/19 23/11 28/12
 28/14 28/15 28/18
 28/21 28/25 36/9
 36/12 47/18 54/8
 54/10 60/15 62/8
categories [2]
 54/12 55/7
causal [1]   65/21
ceased [1]   34/18
certain [2]   46/11
 78/9
certainly [8]   12/4
 30/13 31/6 41/24
 45/18 50/7 50/9
 52/25
certify [1]   80/4
cetera [1]   32/19
challenge [4]   62/1
 64/13 66/2 67/6
challenges [1]
 64/11
Chamber [1]   61/2
chance [1]   29/15
Chartered [1]   2/8
Chechen [1]   17/22
check [6]   16/10
 16/15 16/15 17/1
 17/24 49/8
Chevalier [2]   2/8
 3/17
chose [1]   27/14
circles [2]   44/11
 44/12
circuit [1]   53/13
circularly [1]
 19/25
circumstances [2]
 36/14 63/10
citation [3]   30/2
 53/12 58/12
cite [5]   35/1 39/1
 41/9 53/16 65/25
cited [9]   36/7 38/3
 39/15 41/12 48/20
 51/5 51/6 51/10
 68/4
cites [5]   5/22 5/23
 6/5 67/20 68/8
citing [1]   63/8
citizen [4]   16/13
 49/11 49/12 55/1
citizens [8]   14/14
 16/23 26/6 38/22
 54/15 69/15 69/23
 70/1
civil [12]   1/5 1/15
 3/2 10/2 11/17

37/15 62/13 62/15
 63/14 72/19 72/20
 74/6
claim [17]   4/5 30/4
 37/17 38/1 39/11
 40/22 40/23 40/24
 41/19 44/2 44/15
 45/24 54/10 60/15
 63/10 66/3 77/6
claimant [14]   1/11
 1/22 2/7 3/6 3/9
 3/17 36/21 63/11
 64/5 65/16 65/16
 69/5 72/17 74/12
claimant's [3]   43/3
 74/11 75/18
claimants [2]   31/19
 61/18
claims [12]   31/15
 31/16 40/20 60/17
 61/3 61/9 62/14
 66/5 66/10 66/11
 68/11 68/16
clarification [1]
 37/9
clarity [1]   77/14
clause [7]   31/3
 31/5 32/21 33/4
 33/6 35/5 53/17
clear [15]   6/17 8/3
 8/4 8/5 12/22 12/25
 13/13 15/4 18/9
 23/1 24/12 24/20
 29/1 45/9 47/20
clearly [5]   9/3
 39/8 69/18 69/20
 74/23
close [2]   57/2
 74/22
closer [1]   32/1
CO [5]   1/10 1/21
 3/6 3/9 60/14
coast [1]   60/8
coercion [4]   24/8
 42/9 55/11 64/21
collectively [1]
 68/14
COLUMBIA [1]   1/1
coming [1]   6/8
commander [1]   57/8
commands [1]   33/14
commence [1]   63/13
commerce [28]   37/2
 38/5 38/7 38/10
 38/17 39/5 39/14
 40/5 40/8 48/15
 48/17 48/23 48/25
 50/12 51/16 51/20
 51/22 51/23 52/25
 53/6 53/17 61/3
 75/4 75/6 75/6 75/8
 75/12 76/13
commission [5]   10/5
 10/6 24/4 72/22
 72/23
commit [4]   10/5
 20/2 33/24 72/21
committed [11]   4/11
 4/16 5/8 5/11 16/3
 19/5 20/18 29/22

33/15 33/15 44/22
committee [3]   63/16
 63/19 63/20
committing [6]
 16/16 17/1 17/5
 42/20 73/4 74/4
commodities [1]
 60/16
common [1]   23/13
common-sense [1]
 23/13
companies [4]   32/18
 32/24 57/5 67/18
company [10]   32/11
 32/12 32/24 56/14
 56/15 60/16 60/20
 61/11 66/6 72/8
compared [1]   9/21
comparing [1]   48/6
complained [1]
 65/22
complaint [132]
complaint for [1]
 44/1
complaints [8]   4/4
 56/5 67/16 67/19
 76/15 76/22 78/8
 78/12
complex [1]   58/8
concede [1]   45/13
concedes [1]   11/3
conclude [5]   35/13
 39/4 65/17 66/3
 69/25
concluded [2]   36/9
 71/19
concludes [1]   68/4
concluding [2]   5/24
 35/4
conclusion [1]
 67/20
concrete [1]   65/20
condensates [1]
 57/6
conduct [14]   17/13
 24/2 24/7 34/17
 42/8 42/10 42/17
 53/9 55/10 56/20
 64/21 65/22 70/12
 74/9
conflict [1]   62/16
confusing [1]   45/10
Congress [3]   33/16
 57/21 74/7
Congress' [1]   76/3
conjectural [1]
 65/21
conjunction [1]
 19/18
connection [24]
 6/17 10/1 10/8 11/1
 11/4 11/4 11/7 11/7
 12/4 12/23 13/11
 22/7 22/20 28/8
 28/16 29/1 33/8
 47/20 65/21 72/12
 72/16 72/25 74/11
 77/21
consignee [2]   61/5
 66/7

## C

consistent [1] 70/19
consists [1] 4/5
conspirators [1] 38/15
conspires [1] 55/17
conspiring [2] 39/25 66/23
Constitution [1] 2/24
constitutional [1] 65/18
constructed [1] 30/3
construed [1] 64/9
contained [2] 43/1 56/5
contains [1] 67/14
contemporaneity [2] 19/8 28/10
contemporaneous [3] 8/24 19/7 34/16
contemporaneous to [1] 19/7
contends [1] 60/19
contention [1] 70/5
contest [2] 62/5 64/5
context [8] 31/17 32/15 32/17 32/20 37/4 47/6 51/22 74/9
contrasts [1] 9/4
Control [2] 38/6 56/18
controls [1] 33/2
controversial [2] 23/23 75/14
convinced [4] 25/2 25/4 25/7 68/24
convinced that [1] 25/4
corporate [1] 32/6
corporation [2] 32/7 32/8
corporations [1] 32/18
Corps [1] 56/16
counsel [6] 3/10 3/11 3/18 3/20 52/18 62/3
count [2] 4/6 4/9
country [1] 49/13
country's [1] 56/20
couple [6] 7/12 28/12 44/5 53/20 53/23 59/20
course [1] 48/3
court [68] 1/1 2/22 2/23 3/20 4/2 4/3 5/1 6/6 8/19 9/24 9/25 12/24 13/8 13/15 13/24 14/9 15/3 17/16 18/10 18/20 19/17 20/5 20/5 20/7 20/18 20/19 21/19 21/24 22/21 23/10 25/5

26/1 26/8 26/12 26/23 28/12 30/7 30/11 30/20 33/5 33/7 35/13 35/24 36/9 37/13 39/3 39/8 41/17 42/12 43/2 43/3 45/22 46/14 50/8 51/9 52/15 52/18 52/21 52/24 56/4 61/19 61/22 61/24 62/2 64/13 68/4 72/9 80/3
Court's [7] 12/24 16/6 19/3 54/8 74/18 76/18 77/5
courts [6] 2/23 31/22 38/24 39/2 40/11 53/3
covers [1] 54/12
create [1] 58/3
creating [1] 16/11
crime [61] 4/12 4/16 5/8 5/11 5/12 6/25 9/4 9/4 10/25 13/14 13/18 15/6 15/20 15/21 16/2 16/11 16/16 16/21 17/1 17/5 17/6 17/6 17/10 17/20 17/23 18/6 19/6 19/6 20/2 20/9 20/10 20/17 20/22 20/23 24/3 24/11 24/21 26/5 33/24 34/24 35/3 42/5 42/19 42/21 43/6 44/21 44/25 45/4 49/3 54/14 54/25 55/8 64/17 64/19 69/15 69/21 71/17 73/10 73/13 73/22 74/4
crimes [3] 14/13 23/15 39/9
criminal [19] 10/6 10/7 10/21 11/2 11/7 13/12 17/9 21/1 37/4 37/13 37/17 49/2 50/17 50/17 70/11 72/22 72/23 74/6 74/8
cross [2] 39/19 48/1
crude [14] 41/4 57/6 58/1 58/18 59/25 60/9 60/11 60/22 60/24 61/6 61/12 66/8 68/13 75/12
curious [2] 28/4 35/19
currency [1] 67/13
currently [3] 7/14 34/14 73/25
cv [3] 1/5 1/16 60/11
Cyprus [1] 60/8

## D

date [3] 78/9 78/25

80/10
day [4] 7/17 9/11 22/12 61/21
days [4] 77/1 78/4 79/2 79/9
DC [4] 1/12 2/4 2/9 2/25
deals [4] 41/5 51/18 58/2 67/24
death [2] 55/18 57/11
deaths [1] 18/4
debate [1] 71/21
decades [1] 25/13
decades-long [1] 25/13
decide [1] 17/9
decided [1] 48/24
decision [2] 33/16 65/24
deck [1] 59/19
default [3] 28/22 36/12 47/18
defects [1] 39/11
defend [1] 56/20
defendant [31] 1/8 1/19 4/10 4/20 6/18 8/8 8/10 10/15 10/16 10/18 10/20 11/8 15/19 18/16 22/17 26/25 34/11 34/21 36/19 42/16 42/19 46/16 46/19 47/12 47/15 56/11 59/22 60/18 62/21 63/11 72/16
defendant's [1] 64/15
deficiency [2] 44/6 44/9
defined [3] 23/16 31/11 54/14
defines [1] 24/11
definite [1] 63/12
definition [4] 31/6 31/9 33/3 42/4
delay [1] 23/20
deliberately [1] 58/7
delivery [2] 59/1 60/25
demonstrate [1] 42/18
Department [8] 18/1 18/2 56/17 56/24 57/21 59/4 59/7 61/13
DEREK [2] 2/2 3/14
derived [2] 33/23 37/13
describe [2] 5/21 62/21
describes [2] 35/4 35/5
describing [1] 53/8
designated [18] 14/11 17/25 23/14 55/23 56/2 56/16 56/23 56/25 57/7 57/15 57/23 58/5

59/16 59/16 59/17 66/25 67/4 67/20
designating [1] 68/9
designation [4] 22/1 22/8 22/10 22/11
designed [2] 34/16 42/24
desire [1] 42/16
desk [1] 33/18
destined [1] 68/14
destruction [1] 58/25
detail [6] 4/18 15/11 40/18 66/16 68/2 75/11
detailed [4] 11/25 20/21 63/3 63/21
details [1] 68/9
detection [1] 59/20
determination [1] 42/15
determine [1] 79/3
devoted [1] 49/22
dictionary [8] 31/6 31/9 31/11 32/15 32/20 33/2 47/5 47/7
different [8] 5/2 17/6 31/18 31/21 31/21 49/12 53/8 62/24
differently [1] 7/13
direct [3] 30/13 52/4 52/11
directed [2] 61/15 70/8
directly [1] 9/16
director [3] 7/4 68/18 68/20
disabled [1] 60/2
disagree [6] 13/3 20/20 25/21 67/10 69/11 71/2
disagreeing [3] 13/5 22/21 22/22
disagreement [1] 25/23
disagrees [1] 9/18
discharged [1] 61/24
disclosure [1] 28/18
discuss [1] 41/13
discussed [5] 19/19 22/25 26/3 42/14 66/16
discussing [1] 53/14
discussion [3] 15/5 30/4 52/13
disguise [1] 59/19
dismiss [26] 4/1 4/3 12/11 29/25 30/1 30/6 35/10 35/17 35/18 35/18 35/24 37/8 39/24 40/16 43/21 44/1

**D**

dismiss... [10]
44/9 56/6 62/7 64/6
65/16 71/24 76/15
76/22 78/6 78/7
dismissed [2]   35/14
63/24
dismisses [1]   35/25
dismissing [2]
44/12 70/17
dispute [1]   67/3
distinction [1]
28/24
distinctions [1]
15/4
distinguish [1]
31/3
distinguished [2]
18/18 28/15
district [5]   1/1
1/1 1/25 2/23 45/21
documentation [1]
18/2
documents [6]   36/8
48/20 68/1 68/8
68/23 68/25
DOJ [1]   2/3
DOJ-USAO [1]   2/3
dollars [7]   49/9
58/19 68/15 68/23
71/7 75/15 75/16
domestic [8]   6/23
26/16 30/21 31/1
54/17 54/18 55/3
69/13
done [5]   25/15
29/24 42/1 62/23
65/18
doubt [7]   7/17
15/10 15/12 16/11
16/16 23/21 38/19
doubts [1]   12/7
down [1]   26/9
dozen [1]   68/12
dozens [1]   58/8
drug [1]   53/14
during [3]   26/11
27/19 54/4

**E**

eager [1]   43/18
earlier [5]   19/19
32/21 34/19 67/9
79/11
earth [2]   44/11
44/12
ease [1]   58/11
easily [2]   28/15
75/17
East [2]   23/8 51/16
economy [1]   58/23
effect [11]   42/20
48/14 49/20 50/22
51/23 52/4 52/5
52/12 68/24 75/8
75/13
effected [1]   35/23
efforts [1]   18/6
eight [1]   21/17

either [8]   4/23
4/25 11/20 31/25
46/6 55/7 64/16
78/7
elaborate [2]   52/13
72/3
element [4]   34/17
74/17 76/19 76/23
elements [4]   20/10
20/25 74/20 74/23
else [9]   29/11
29/12 43/12 45/12
47/21 49/16 77/2
78/13 79/15
Emirates [1]   61/10
employed [1]   68/12
enable [1]   59/11
encompasses [1]
6/22
encompassing [2]
76/2 77/7
engage [1]   8/23
engaged [37]   6/25
7/10 7/14 9/7 9/8
9/12 9/20 10/23
14/12 19/13 19/15
19/16 23/14 25/13
26/4 34/1 34/3
34/14 34/23 39/14
40/8 44/24 54/13
54/24 55/24 55/25
60/4 67/1 67/2
69/10 69/14 69/20
71/16 73/10 73/13
73/21 73/25
engages [5]   35/2
55/24 55/25 67/1
67/2
England [1]   61/19
enjoin [1]   61/20
enough [10]   12/19
17/10 17/18 21/2
31/18 38/8 41/24
48/19 69/9 72/5
entered [1]   61/9
entities [14]   4/21
4/22 27/1 27/4
27/12 31/7 31/12
32/22 46/17 47/13
49/14 56/10 56/25
75/7
entitled [1]   80/5
entitlement [1]
36/11
entity [46]   5/24
6/23 7/9 9/7 9/10
9/11 9/14 9/17 9/20
10/23 12/14 19/5
19/13 19/16 20/25
26/3 26/17 26/22
27/17 27/18 28/21
30/17 30/22 30/25
31/3 32/7 34/23
35/2 43/19 44/24
46/9 47/10 47/19
49/23 50/1 54/13
54/17 54/19 54/24
55/6 60/21 64/16
64/18 69/13 71/15
73/9

enumerated [6]   24/5
24/13 55/12 55/13
64/23 64/24
equivalent [1]
68/15
especially [3]   28/7
29/4 59/16
essentially [3]
15/1 18/22 25/13
establish [23]   4/15
4/24 5/8 10/7 11/1
20/9 20/22 23/25
24/21 44/21 48/20
63/6 64/1 65/1 65/5
67/7 70/25 71/5
72/24 74/15 74/23
75/1 75/10
established [2]
13/22 75/17
establishes [2]
11/6 64/5
et [1]   32/19
European [1]   61/23
even [27]   6/7 12/6
12/9 12/18 19/24
20/5 20/13 20/18
21/3 24/3 24/15
24/25 25/21 27/15
27/16 27/24 32/7
33/2 38/11 38/11
39/3 47/9 47/22
49/25 52/23 65/25
75/6
event [4]   8/8 8/15
49/13 72/1
events [3]   6/9
18/21 21/17
evidence [6]   15/20
20/12 63/7 63/25
64/2 70/23
ex [1]   61/18
exact [2]   32/13
36/14
exactly [1]   43/2
examines [1]   30/20
example [7]   9/5
18/10 49/7 52/17
57/2 58/16 67/16
except [2]   62/15
75/12
Executive [7]   21/14
22/1 22/5 22/6
22/12 22/12 56/24
exercise [3]   53/17
77/17 78/2
Exhibit [4]   51/5
51/7 51/11 51/17
Exhibit A [2]   51/5
51/11
Exhibit B [2]   51/7
51/17
exhibits [3]   41/12
51/9 52/7
exists [1]   75/24
expansively [1]
70/13
explain [3]   8/21
18/24 30/8
explained [2]   70/21
73/6

explains [1]   68/9
explanation [1]
68/8
exploration [1]
57/17
export [1]   57/18
exports [2]   41/4
58/1
express [2]   34/14
72/10
extent [5]   46/13
50/22 62/16 70/22
71/21
external [1]   49/23
extraterritorial [3]
38/13 65/5 74/15
extremely [1]   13/20

**F**

F.Supp.2d [2]   63/17
64/10
facilitate [7]   10/5
20/2 21/6 33/15
57/13 68/22 72/22
facilitating [1]
57/9
facilitators [1]
58/9
fact [17]   17/8
20/17 27/14 32/20
32/24 38/25 39/14
42/25 48/24 50/15
56/5 58/14 65/19
66/13 70/16 74/5
77/9
factions [1]   48/21
facts [28]   5/18
7/25 11/25 15/2
15/5 18/18 24/16
25/1 27/24 29/6
31/16 31/19 37/5
37/6 38/1 40/22
40/23 41/24 44/21
48/16 56/7 63/3
63/13 63/21 67/7
76/17 77/6 78/1
factual [16]   15/4
15/6 20/21 20/22
32/2 36/7 36/14
38/9 38/18 39/3
39/12 43/10 64/8
64/11 64/13 67/14
factually [1]   41/2
failed [2]   44/14
65/7
fails [8]   4/8 30/4
65/1 65/3 65/5
65/11 66/18 72/15
failure [5]   4/4
44/1 45/7 45/23
76/22
fair [5]   12/19 21/2
37/19 51/21 77/12
fairly [1]   74/5
fall [3]   21/19 33/3
40/10
falls [1]   5/3
far [5]   31/13 31/25
33/4 33/6 38/7
fashion [1]   14/24

**F**

fast [1]   26/8
favor [1]   64/9
favorable [2]   65/24
 66/14
FBI [1]   56/8
federal [43]   4/12
 4/16 5/8 5/11 5/12
 6/25 13/18 14/13
 17/10 19/6 20/9
 20/23 23/15 24/3
 24/11 24/21 26/5
 29/23 30/13 33/17
 33/24 33/24 34/24
 34/25 35/3 40/2
 42/5 44/25 45/4
 54/14 54/25 55/8
 62/11 62/15 63/14
 64/17 64/19 69/14
 69/21 71/17 73/10
 73/13 73/22
file [4]   44/9 46/6
 76/25 78/22
filed [6]   35/22
 44/1 60/15 61/18
 62/25 64/1
filing [2]   39/24
 64/3
final [2]   36/3
 76/11
finally [1]   65/10
finance [4]   6/1
 14/21 32/3 57/19
financial [3]   21/12
 57/10 67/22
financing [6]   15/15
 16/17 33/9 34/8
 41/14 68/10
find [1]   30/11
finding [4]   21/22
 22/5 36/1 57/21
findings [5]   5/22
 20/11 20/24 20/24
 21/1
fine [14]   3/22 5/5
 6/11 7/16 7/16 16/7
 19/9 23/20 23/22
 24/18 78/23 78/25
 79/7 79/14
fined [1]   55/17
first [18]   4/9 7/12
 8/16 14/25 24/14
 24/25 26/2 31/3
 33/4 33/6 35/5
 35/10 43/25 54/23
 66/17 70/2 75/3
 76/6
focus [3]   46/12
 50/15 72/12
focused [3]   13/10
 21/19 45/7
folks [2]   39/19
 39/21
following [2]   57/11
 62/18
follows [1]   56/7
For the Claimant [1]
 2/7
force [57]   5/15

5/16 5/17 6/1 6/4
6/16 14/8 14/20
15/14 16/1 21/8
21/10 21/13 23/13
25/18 28/3 32/5
39/7 47/24 49/22
52/19 52/21 52/22
53/3 56/16 56/21
56/23 57/2 57/3
57/8 57/11 57/19
57/24 58/3 58/6
58/7 58/17 58/21
65/4 66/20 67/4
67/15 67/17 67/23
67/25 68/7 68/10
68/12 68/17 68/22
69/8 69/11 71/1
71/6 71/8 74/1
74/13
Force's [4]   21/7
53/1 57/14 58/4
forcefully [2]
 45/14 45/25
Forces [1]   67/9
foregoing [1]   80/4
foreign [41]   6/23
 14/11 23/14 26/16
 30/21 31/1 37/2
 38/5 38/6 38/7
 38/10 38/17 39/5
 39/14 40/5 40/8
 48/14 48/25 51/16
 51/20 51/22 51/23
 51/25 52/25 53/4
 53/17 54/17 54/18
 55/3 55/16 56/17
 56/25 61/2 66/22
 69/13 75/4 75/6
 75/7 75/7 75/12
 76/3
foremost [1]   70/3
forfeitability [1]
 64/1
forfeitable [3]
 30/24 33/18 35/3
forfeited [6]   8/25
 30/6 40/15 43/22
 43/24 45/21
forfeiture [54]   4/6
 4/7 5/6 7/2 7/9 8/5
 9/2 9/6 9/15 10/3
 10/4 10/19 10/20
 11/17 18/22 20/1
 22/18 25/25 26/1
 29/21 31/17 31/20
 33/13 33/22 34/22
 35/5 35/6 35/22
 36/2 37/15 41/21
 45/2 46/24 54/11
 55/8 62/1 62/5
 62/11 62/14 62/18
 63/2 63/7 64/3 64/6
 65/12 69/17 71/12
 71/13 72/19 72/20
 72/21 73/15 74/6
 74/6
formal [1]   32/13
former [2]   40/1
 57/8
forms [1]   4/13

forth [5]   7/5 8/6
 8/15 37/14 37/15
found [8]   17/11
 39/1 57/19 58/2
 58/19 58/21 75/2
 76/9
founded [2]   60/16
 60/21
frame [1]   63/13
frankly [1]   77/16
front [1]   67/18
full [3]   28/17
 36/13 58/23
fund [2]   39/16
 39/17
funding [2]   25/17
 59/10
funds [1]   51/15
further [8]   26/24
 37/9 46/16 55/21
 58/21 65/7 68/20
 77/20
furtherance [1]
 43/7

**G**

G-V [1]   63/17
gas [2]   57/6 60/20
gas/oil [1]   57/6
gathered [1]   64/2
gave [2]   18/10 65/4
gears [1]   25/8
general [1]   7/4
generally [3]   6/15
 64/12 69/11
generate [4]   6/4
 41/6 51/19 67/24
generating [1]
 73/17
generation [2]   21/7
 57/14
Geneva [1]   7/5
Ghasemi [4]   21/8
 57/3 57/7 57/7
given [7]   37/20
 49/21 73/1 73/12
 75/5 77/2 77/9
gives [2]   47/7
 49/15
giving [7]   16/4
 18/11 18/21 25/18
 31/19 49/12 58/12
glad [1]   9/23
global [3]   23/8
 50/12 59/11
gloss [1]   42/12
goalposts [1]   38/20
goes [9]   11/13
 11/21 30/22 34/20
 40/20 41/8 51/13
 51/17 74/19
good [6]   3/12 3/15
 3/16 29/9 29/18
 29/19
goods [2]   21/13
 67/22
government [72]   2/2
 5/22 7/17 10/7 11/2
 11/12 12/1 12/9
 12/11 12/17 12/21

15/13 18/3 18/6
18/21 19/11 19/22
19/22 22/24 24/2
24/7 24/8 28/5
29/15 29/20 32/7
35/15 36/17 36/21
40/2 42/9 42/10
42/17 42/18 42/25
43/18 44/20 46/20
48/5 48/22 54/9
54/21 55/10 55/12
56/11 58/14 62/4
62/6 62/9 63/4 63/6
63/22 63/24 64/2
64/21 64/22 65/10
66/2 68/1 69/5 69/6
71/20 72/1 72/5
72/24 74/20 74/21
74/25 76/16 77/13
78/9 78/20
government's [18]
 4/21 8/14 10/4
 10/19 10/22 10/24
 20/1 22/18 33/7
 43/20 45/6 50/11
 51/6 51/8 68/2
 72/20 73/3 77/18
government-owned [1]
 32/7
Grace [4]   28/13
 36/14 47/17 48/6
grant [2]   12/6
 19/10
granted [1]   61/22
granting [1]   77/3
greater [3]   12/18
 68/2 77/14
ground [1]   63/24
grounds [5]   28/15
 36/18 44/10 44/12
 62/20
group [3]   17/22
 57/5 68/21
Guard [1]   56/16
guess [3]   25/2
 27/25 37/7
guilty [1]   17/11
Gulfstream [2]
 63/17 64/10

**H**

half [2]   58/18
 68/15
halfway [1]   34/10
HAMMOND [2]   2/2
 3/14
hands [1]   19/11
happened [3]   19/12
 21/18 29/10
happens [2]   35/15
 49/19
happy [3]   33/4
 78/23 79/6
hard [1]   18/5
hear [5]   22/23 28/4
 29/14 43/18 46/8
heard [7]   19/2 30/5
 34/15 46/11 46/11
 77/12 77/24
HEARING [1]   1/24

**H**

heft [3]   38/9 38/12 39/3
heightened [3]   21/3 36/20 65/11
held [1]   31/22
Helen [1]   3/19
helpful [3]   40/17 54/3 77/15
helps [2]   5/25 57/19
here's [2]   20/4 34/20
Hezbollah [13]   6/4 16/10 16/15 17/2 18/11 39/18 41/6 49/8 49/9 49/12 51/20 58/3 68/18
High [3]   61/19 61/22 61/24
higher [2]   12/12 31/23
highest [2]   21/6 57/13
hold [2]   11/9 60/18
holds [1]   62/4
home [1]   59/2
Homeland [1]   56/8
Honor [19]   3/2 3/12 3/16 29/18 32/9 36/5 38/11 40/19 43/13 43/17 47/8 51/2 53/7 77/2 78/3 78/5 78/11 79/7 79/16
HONORABLE [1]   1/24
hook [5]   2/22 36/22 37/2 80/3 80/10
HUDAK [7]   2/2 3/12 29/17 50/21 75/8 75/22 76/24
Hudak's [2]   70/18 74/17
human [1]   59/2
hundreds [1]   75/15
hypothetical [1] 65/21

**I**

idea [2]   5/7 28/3
identification [1] 60/3
identified [1] 46/10
identify [6]   31/15 37/24 37/25 40/22 51/10 63/1
ignore [1]   40/6
illicit [1]   39/17
imagery [1]   59/20
imagining [1]   79/2
Immigration [1] 56/3
imminent [1]   65/20
implausible [1] 43/9
important [6]   13/20 23/2 23/25 28/10 28/24 29/6

imprisoned [2] 55/18 55/19
improper [1]   46/2
improperly [4] 25/25 26/20 27/22 45/16
inaudible [1]   78/16
include [6]   27/2 27/17 27/24 70/14 72/8 77/3
included [2]   61/1 71/3
includes [4]   31/7 32/18 67/25 71/11
including [7]   6/1 39/20 49/24 53/10 58/8 58/24 67/12
incorporate [1] 41/9
incorporated [12] 5/23 38/3 40/7 43/11 48/19 51/1 60/17 60/21 68/3 68/5 68/25 75/10
incorrect [2]   19/1 70/4
indeed [2]   39/1 64/2
independent [1] 70/22
indicated [1]   67/9
individual [18] 6/23 9/10 18/12 19/5 26/3 27/8 28/20 28/21 29/22 30/22 30/25 31/3 47/10 47/10 54/13 54/17 54/24 69/13
individuals [7] 21/5 28/19 31/7 31/12 32/21 57/5 57/12
industries [3]   5/25 51/13 59/6
industry [3]   57/2 58/22 61/3
inefficient [1] 30/12
inference [4]   25/10 25/14 25/19 25/22
influence [57]   4/19 4/21 4/25 17/12 24/1 24/6 24/15 25/9 25/15 25/24 26/17 26/22 26/25 27/21 27/23 27/23 28/2 28/7 28/14 29/4 29/7 29/24 29/25 30/2 30/6 30/15 31/2 32/4 33/5 34/3 35/9 35/11 40/13 40/25 41/16 41/23 42/8 42/16 42/24 45/8 46/17 46/19 47/13 47/16 47/23 47/24 48/13 54/19 55/6 55/10 64/18 64/20 65/9 71/15 71/23 77/14 77/23

information [1] 38/4
informed [1]   62/3
initial [1]   33/11
injunction [3] 61/18 61/23 61/25
injury [4]   65/19 65/22 65/24 66/13
injury-in-fact [2] 65/19 66/13
insert [1]   7/25
instance [1]   51/11
instead [3]   33/15 42/17 67/6
instrumental [1] 5/24
instruments [1] 67/13
insubstantial [1] 30/12
insufficient [2] 30/12 48/2
intangible [1] 67/12
integral [2]   41/14 41/15
intelligence [1] 56/22
intend [2]   43/6 79/18
intended [2]   33/23 42/19
intends [1]   62/5
inter [1]   49/13
inter-country [1] 49/13
interest [1]   60/18
interesting [1] 17/8
interests [1]   17/23
intermediaries [1] 58/8
international [7] 1/7 1/17 3/5 3/8 51/12 52/12 59/5
internationally [1] 50/23
interpretation [1] 52/1
interstate [4] 48/23 49/13 75/4 76/13
intimidation [4] 24/7 42/9 55/11 64/21
into [10]   4/18 4/23 39/20 40/7 51/13 52/3 59/21 61/9 68/3 76/9
intra [6]   4/13 5/18 16/4 23/4 49/3 49/20
intra-Iranian [6] 4/13 5/18 16/4 23/4 49/3 49/20
introduced [1]   77/6
investigation [2] 56/8 63/13
invoice [2]   60/23 60/25

involve [1]   64/12
involved [21]   9/5 9/22 10/6 10/20 10/25 14/20 15/14 19/19 22/20 23/7 33/14 33/21 33/23 48/7 48/22 49/23 61/11 70/11 71/6 72/23 73/16
involvement [3] 58/10 58/22 67/18
involving [2]   36/13 56/9
Iqbal [2]   31/23 32/1
Iqbal/Twombly [1] 31/23
Iran [16]   6/1 7/17 7/21 14/19 15/14 18/6 40/2 49/14 51/14 52/14 52/19 56/13 57/18 58/23 59/19 59/22
Iran's [9]   5/25 38/4 51/12 56/9 57/2 57/4 59/5 59/8 59/9
Iranian [33]   4/13 5/18 16/4 18/3 19/10 21/5 21/6 21/9 23/4 36/13 39/15 41/4 48/21 49/3 49/20 49/23 50/1 50/18 56/10 56/14 56/15 56/19 57/6 57/12 57/13 58/1 58/10 58/20 59/10 59/25 60/9 60/11 75/12
IRGC [85]
IRGC's [1]   58/23
IRGC-QF [17]   8/10 8/12 10/18 28/9 30/15 34/13 38/22 39/16 40/10 41/1 41/6 41/14 43/7 46/18 47/14 47/20 51/19
IRGC-QF's [2]   41/7 42/23
IRGC-Qods [5]   5/14 57/8 58/7 68/12 68/17
irreducible [1] 65/18
irrelevant [1] 18/22
is not [1]   50/7
is ultimately [1] 8/8
Islamic [1]   56/15
Island [1]   59/22
Israel [1]   25/16
issue [29]   4/2 6/10 8/8 12/7 16/8 21/18 22/13 42/7 45/19 54/23 55/2 55/3 55/5 56/12 59/14 60/10 60/12 60/16 63/1 64/13 66/12

**I**

issue... [8]   69/7
 69/19 71/18 72/8
 73/4 74/4 74/9
 77/23
issued [4]   22/12
 36/4 60/23 61/15
issues [2]   23/24
 76/20

**J**

January [1]   59/7
January 23rd [1]
 59/7
JEFF [3]   2/22 80/3
 80/10
Jet [1]   63/17
JUDGE [4]   1/25
 28/12 36/9 42/13
judgment [4]   11/20
 20/13 36/12 46/23
judgments [2]   28/22
 47/18
July [1]   79/12
jurisdiction [27]
 36/18 36/19 36/24
 37/13 37/14 37/18
 37/24 38/13 38/14
 38/15 38/15 38/24
 39/2 39/8 39/10
 40/10 50/8 52/21
 52/23 53/3 62/20
 65/5 74/15 74/19
 75/24 76/3 76/19
jurisdictional [10]
 36/22 37/5 37/6
 37/10 37/23 74/17
 74/24 75/1 76/17
 76/23
Justice [2]   61/14
 61/19

**K**

keep [1]   20/5
Kharg [1]   59/21
Khobar [1]   39/23
kill [1]   39/25
kind [10]   12/16
 29/3 30/24 31/4
 35/8 36/3 38/20
 41/10 46/2 48/7
knowing [1]   66/20
knowingly [2]   55/15
 66/21
knowledge [2]   55/22
 66/24
known [2]   59/15
 60/20
knows [1]   74/7
Kollar [1]   42/13
Kollar-Kotelly's [1]
 42/13
Kotelly's [1]   42/13

**L**

lack [2]   22/25
 40/12
lading [1]   61/4
language [11]   5/10

7/11 7/13 8/23 9/1
9/19 15/1 23/12
27/13 30/20 31/20
large [1]   40/6
largely [1]   72/13
Lastly [1]   48/13
later [4]   29/9
 35/23 43/23 59/21
law [4]   6/20 9/17
 42/12 47/4
laws [1]   33/19
lawyer [1]   3/19
leases [1]   6/3
least [6]   8/6 37/9
 43/22 50/4 75/11
 75/19
leave [3]   46/6 77/3
 77/7
led [2]   58/17 68/12
left [1]   60/10
legal [3]   31/15
 40/21 62/4
length [2]   42/14
 60/19
less [6]   24/16 25/1
 26/12 26/12 28/9
 45/21
level [1]   21/6
levels [1]   57/13
liberally [1]   64/9
life [2]   55/20
 55/20
lightered [2]   60/7
 60/12
lightering [1]   60/2
likely [2]   42/18
 65/23
Limited [1]   61/11
limousine [3]   7/3
 7/6 33/18
linked [1]   8/7
list [4]   48/1 59/17
 76/5 76/5
listed [1]   24/25
literally [2]   13/25
 50/1
litigated [1]   28/23
little [10]   4/22
 5/20 17/15 17/16
 18/4 31/18 31/20
 40/17 46/15 76/2
living [1]   27/15
LLC [1]   60/20
loaded [3]   59/14
 59/22 61/5
loading [1]   68/17
location [2]   62/24
 62/25
logistics [3]   35/19
 61/10 68/19
long [2]   25/13
 35/24
longer [1]   41/11
look [5]   50/25 51/4
 53/20 53/23 75/25
looked [3]   28/13
 54/4 75/9
looking [2]   42/11
 44/19
looks [3]   9/25

13/15 26/23
lot [6]   17/8 21/16
 39/3 39/14 46/11
 50/13
lots [1]   18/3
Lujan [1]   65/25

**M**

M/T [8]   1/6 1/17
 3/4 3/7 59/15 59/25
 60/7 60/12
maintains [4]   56/11
 57/1 61/6 66/8
major [1]   51/14
makes [3]   35/25
 46/15 66/17
making [2]   6/14
 41/10
maligned [1]   51/15
managers [2]   58/9
 61/20
manages [1]   57/5
managing [2]   68/18
 68/20
mandating [1]   61/23
manner [1]   25/20
many [3]   18/4 58/13
 71/7
March [1]   1/12
maritime [5]   1/7
 1/17 3/5 3/8 62/14
markets [2]   50/23
 52/12
Marsh [1]   3/19
mass [1]   58/25
master [1]   61/4
material [44]   5/14
 6/16 7/1 7/7 7/10
 12/14 15/23 16/22
 17/22 18/5 21/12
 23/4 34/24 36/25
 39/5 41/12 41/19
 41/22 42/6 48/21
 49/4 49/17 55/15
 58/6 65/4 66/19
 66/21 67/8 67/11
 67/13 67/22 68/6
 69/2 69/10 69/22
 69/25 70/7 71/1
 71/7 71/9 72/14
 73/17 74/1 77/22
materially [4]
 21/11 57/23 67/21
 69/7
materials [5]   39/15
 40/6 43/10 54/4
 68/4
matter [14]   4/1
 6/20 30/7 33/11
 36/18 37/12 38/18
 54/7 54/7 62/20
 64/12 74/19 76/19
 80/5
may [14]   5/15 11/15
 17/5 23/22 32/14
 37/8 40/15 46/22
 63/24 64/2 64/6
 72/2 78/9 78/12
maybe [5]   9/17 15/4
 17/3 25/16 47/25

mean [21]   7/25 9/1
 9/17 14/18 14/23
 15/8 15/11 21/16
 23/21 31/2 39/23
 41/1 43/23 44/4
 45/8 47/3 48/1 49/8
 52/9 74/3 77/24
meaning [2]   47/5
 47/7
means [7]   12/10
 27/15 48/25 55/9
 56/1 59/1 67/11
mechanism [1]   46/25
meet [6]   12/1 62/18
 63/4 63/22 64/3
 65/11
mention [4]   13/25
 27/19 30/1 65/15
mentioned [3]   54/4
 64/24 66/23
mere [1]   21/14
merely [2]   45/16
 65/23
met [5]   20/9 20/10
 20/25 38/15 45/5
MICHAEL [2]   2/7
 3/16
microphone [1]
 78/17
Middle [2]   23/8
 51/16
might [2]   6/20 76/3
military [2]   49/23
 56/22
Miller [2]   2/8 3/17
million [1]   49/9
millions [3]   68/23
 71/7 75/15
millisecond [1]
 15/12
millisecond's [1]
 15/9
mind [1]   20/5
minimum [1]   65/19
minister [2]   21/9
 57/4
ministry [5]   21/5
 57/12 57/15 57/16
 61/1
minute [2]   4/23
 13/7
mispronouncing [1]
 5/15
missing [1]   42/22
Mnuchin [1]   59/8
modifies [1]   9/9
modify [1]   9/9
Mohammed [1]   42/14
moment [5]   13/13
 25/7 32/9 32/17
 72/2
money [5]   17/2
 18/11 18/12 25/11
 25/18
moon [1]   44/11
more [23]   4/18 12/9
 12/18 12/20 37/11
 38/12 40/18 41/11
 42/18 45/9 50/20
 55/18 63/12 68/12

**M**

more... [9]    68/15
69/6 69/10 70/13
70/16 74/13 74/22
75/5 76/1
morning [6]    3/12
3/15 3/16 29/18
29/19 66/16
MOSS [1]    1/24
mostly [1]    68/14
motion [21]    1/24
3/24 29/25 30/2
30/6 33/12 35/10
38/20 38/21 39/24
40/16 42/22 43/21
44/1 44/9 46/23
51/9 56/6 62/10
71/24 79/4
motions [3]    3/25
54/7 64/11
motivated [1]    42/16
move [5]    22/14
23/24 53/22 64/6
65/16
moved [1]    62/7
moving [2]    38/20
63/12
Mr. [14]    29/17
32/16 34/6 42/3
43/15 50/21 69/23
70/23 73/19 75/8
75/22 76/24 77/12
78/13
Mr. Hudak [5]    29/17
50/21 75/8 75/22
76/24
Mr. Satin [7]    42/3
43/15 69/23 70/23
73/19 77/12 78/13
Mr. Satin's [2]
32/16 34/6
much [10]    24/16
24/25 28/9 38/5
43/14 45/21 70/13
75/11 76/24 78/3
multiple [1]    69/3
must [17]    11/24
23/2 42/18 51/22
55/22 62/19 62/20
62/21 62/23 63/1
63/3 63/9 64/16
64/17 64/20 65/22
66/24

**N**

name [6]    3/11 26/21
27/17 32/25 45/7
45/11
named [6]    28/16
28/25 46/9 46/9
47/19 66/7
namely [5]    8/15
39/7 45/3 46/17
47/14
names [1]    61/4
narrow [1]    70/3
narrower [3]    34/7
70/15 77/20
national [7]    53/5

53/11 53/18 56/14
56/15 76/4 76/6
Nationality [1]
56/3
nationally [1]
59/17
nations [1]    51/25
natural [3]    27/4
31/12 72/7
navigating [1]
61/21
nearly [3]    23/5
58/17 68/13
necessarily [3]
22/21 49/20 73/2
necessary [2]    66/4
70/17
need [7]    20/20
24/22 31/14 65/25
71/18 78/17 78/24
need to [1]    24/22
needs [3]    18/8
31/15 73/3
nefarious [1]    58/24
network [4]    58/8
58/17 59/5 68/12
networks [1]    51/12
next [3]    22/15
76/10 76/11
nexus [6]    13/21
23/1 49/1 73/20
74/24 75/1
NIOC [23]    5/24
30/11 30/15 32/2
33/3 38/17 39/4
39/13 40/8 40/24
41/3 41/13 41/19
43/4 43/5 57/16
57/19 57/22 57/23
57/25 58/5 58/19
68/17
NIOC's [1]    75/11
NITC [95]
NITC's [10]    23/3
24/1 32/3 39/13
41/13 49/4 67/8
67/14 68/6 68/10
NITC-owned [1]
18/15
nor [1]    27/19
NOSTOS [8]    1/17 3/7
60/7 60/12 61/7
61/12 61/14 66/9
note [2]    63/19
63/20
noted [1]    59/8
notes [1]    63/16
notice [2]    31/19
62/7
notified [1]    61/14
notion [2]    40/4
49/5
nouns [1]    31/5
November [3]    59/24
60/23 61/24
November 12th [1]
61/24
November 3rd [1]
59/24
November of [1]

60/23
number [8]    1/7 1/18
3/5 3/8 5/7 18/9
18/9 28/15
numerous [2]    67/14
68/1
NW [3]    2/3 2/8 2/24

**O**

O'TOOLE [2]    2/7
3/18
obfuscating [1]
58/10
objection [1]    78/4
obligation [4]
37/23 37/23 37/24
40/20
obscure [1]    67/18
observed [1]    58/7
observes [1]    63/20
obtained [1]    35/21
obvious [2]    45/13
74/5
obviously [2]    12/20
41/15
occur [1]    75/4
occurred [1]    62/24
occurs [2]    76/10
76/12
October [3]    21/22
59/18 61/17
October 15th [1]
59/18
October 30th [1]
61/17
OFAC [26]    5/23 6/2
6/9 20/11 20/24
21/25 22/5 22/9
22/11 41/5 48/24
49/1 56/18 56/23
57/7 57/11 57/15
57/18 57/22 58/2
58/5 58/6 58/19
58/21 59/17 67/20
OFAC's [2]    67/20
68/8
off [2]    48/1 60/8
offender [4]    75/23
76/6 76/7 76/9
offense [40]    4/14
5/19 10/6 10/7 10/9
11/2 11/8 13/12
17/11 23/1 23/3
23/5 24/1 24/5 24/6
24/12 24/13 36/25
42/7 49/2 49/3
49/20 50/17 50/18
55/9 55/13 64/20
65/8 72/22 72/23
72/25 73/5 73/8
74/16 74/21 75/2
76/10 76/12 76/20
76/23
offenses [3]    24/13
55/13 75/3
office [6]    3/13
3/14 3/19 7/5 38/5
56/17
official [6]    2/23
21/8 40/3 57/3

68/22 80/3
often [1]    26/12
oil [55]    6/3 7/18
14/22 14/23 15/15
18/15 32/3 38/4
41/5 41/7 50/16
51/18 52/4 52/12
52/14 52/14 56/9
56/13 56/14 57/2
57/5 57/6 57/9
57/18 57/20 58/4
58/10 58/18 58/20
58/20 58/22 60/11
60/20 60/22 60/24
61/5 61/6 61/12
62/4 62/6 66/7 66/7
66/8 66/12 67/17
67/18 67/24 68/13
68/17 68/23 69/19
70/6 71/7 75/12
75/16
Oman [4]    60/22 61/1
61/2 61/5
Oman's [1]    61/1
Omani [1]    66/6
ONBOARD [4]    1/6
1/17 3/4 3/7
onboarding [1]    60/1
one [44]    5/7 8/7
11/11 12/25 16/18
16/24 17/21 18/9
19/18 21/16 21/16
23/18 24/13 24/14
24/24 24/25 25/11
26/2 28/13 28/21
29/21 32/9 33/14
33/25 36/15 37/11
37/23 47/19 50/20
50/22 51/3 54/10
55/12 58/16 59/4
63/17 64/10 64/23
70/19 70/20 74/12
75/21 76/10 76/11
ones [2]    9/15 9/21
only [14]    18/14
19/20 19/20 19/25
20/2 28/19 35/1
36/6 36/10 38/2
39/16 41/21 42/5
63/10
only get [1]    19/20
onto [2]    59/15
59/25
opening [3]    45/13
45/23 72/13
operations [6]    32/3
39/17 41/7 56/22
58/5 67/17
operative [1]    34/20
opinion [3]    42/13
72/10 77/5
opportunity [5]
35/15 36/3 45/19
62/1 76/16
opposed [3]    41/10
53/6 65/23
opposes [1]    62/9
opposition [7]
45/25 46/5 46/5
50/13 51/6 51/8

**O**

opposition... [1]  68/2
order [12]  21/14 22/1 22/5 22/7 22/12 22/12 24/20 35/18 35/21 36/3 56/24 79/19
ordered [1]  61/22
organization [49]  1/7 1/18 3/5 3/8 6/24 6/24 7/9 12/14 12/15 16/17 16/19 16/23 17/25 18/1 18/13 19/5 21/10 26/4 26/17 30/22 30/25 31/4 34/25 44/24 54/13 54/18 54/20 54/24 55/6 55/16 55/23 55/23 55/24 55/25 56/1 56/2 56/2 66/22 66/25 66/25 67/1 67/2 69/3 69/9 69/14 69/20 73/9 73/18 73/21
organization's [1]  32/25
organizations [11]  14/12 23/14 27/1 27/12 32/22 41/16 46/17 47/14 56/25 67/5 69/3
orient [1]  26/1
originated [1]  56/13
others [1]  29/24
otherwise [1]  32/16
out [13]  12/16 16/14 19/10 25/16 34/9 35/1 38/22 39/17 40/1 41/25 45/16 53/21 56/8
outside [1]  40/10
over [37]  4/21 26/17 26/22 26/25 28/2 28/7 29/4 29/7 29/24 30/15 32/4 34/3 36/19 36/25 38/16 39/8 39/10 41/1 41/16 41/23 46/17 46/20 47/13 47/16 47/23 47/24 48/13 52/21 52/23 54/19 55/6 58/18 62/21 64/18 71/15 74/16 75/24
overall [3]  11/5 33/8 34/18
overly [1]  70/3
Overseas [3]  60/20 60/23 66/6
oversees [1]  57/16
overstatement [1]  5/21
own [2]  39/17 59/12
owned [3]  7/3 18/15 32/7
owner [1]  65/2

owners [1]  61/20

**P**

p.m [1]  79/21
pages [2]  52/3 53/10
pandemic [1]  26/11
paper [1]  49/16
papers [5]  4/14 11/3 33/12 41/13 51/10
paragraph [14]  8/7 14/11 14/25 15/11 21/25 26/24 34/6 35/7 46/15 51/5 51/6 55/22 59/3 75/25
paraphrase [1]  41/9
parroting [1]  15/1
parse [1]  34/9
part [8]  26/15 26/18 34/18 37/17 37/18 44/22 76/10 79/18
parte [1]  61/18
particular [10]  5/9 10/24 12/22 13/10 44/6 44/9 66/5 70/6 70/6 77/13
particularity [5]  36/20 37/21 40/12 62/22 63/11
particularized [2]  31/24 65/20
particularly [1]  23/23
parties [1]  65/14
parts [2]  15/3 45/2
party [1]  48/7
passage [1]  39/20
past [2]  60/5 73/22
pause [1]  13/7
pencils [1]  33/18
people [1]  59/12
perhaps [6]  5/20 37/8 52/16 70/16 74/13 77/5
period [1]  79/5
permitted [1]  39/19
perpetrated [1]  39/21
perpetrates [1]  33/16
perpetrating [24]  6/25 7/15 8/23 9/8 9/8 9/12 9/20 14/13 19/7 19/14 23/15 26/4 34/2 34/4 34/15 54/14 54/25 64/17 69/14 69/21 71/16 73/10 73/13 73/22
perpetration [1]  34/23
persistent [1]  59/11
person [48]  17/10 26/16 26/21 26/23 27/2 27/4 27/10 27/14 27/15 27/18

27/20 27/25 28/1 28/2 28/5 28/8 29/2 29/2 29/7 30/17 31/2 31/4 31/7 31/9 31/11 32/18 33/3 34/2 34/3 43/18 45/11 46/9 46/14 47/5 47/7 47/9 47/19 54/19 55/5 55/19 55/22 59/17 66/24 71/15 72/7 72/7 75/24 76/7
personal [1]  9/22
personally [1]  42/16
personnel [1]  68/16
persons [7]  27/5 28/16 28/19 28/20 28/25 29/23 31/12
persuaded [2]  74/10 74/16
pertain [1]  43/8
petrochemical [4]  5/25 51/13 59/6 59/9
PETROKIMYA [5]  1/10 1/21 3/6 3/9 60/14
petroleum [29]  1/6 1/16 3/4 3/7 5/25 21/5 21/9 30/14 36/13 39/16 40/25 41/22 50/12 50/13 50/23 51/13 56/12 57/4 57/10 57/12 57/16 57/18 59/6 59/9 59/9 61/10 61/11 66/11 66/12
PETROLEUM-PRODUCT [4]  1/6 1/16 3/4 3/7
picks [2]  30/24 31/4
pieces [1]  77/5
pivot [1]  13/12
place [2]  61/13 64/6
plain [1]  9/18
plainly [2]  32/2 40/24
plaintiff [3]  1/4 1/14 64/9
plaintiff's [2]  3/11 64/7
planning [22]  6/25 7/14 7/18 8/23 9/7 9/8 9/12 9/20 14/12 19/6 19/14 23/15 26/4 34/23 54/13 54/24 64/16 69/14 69/21 71/16 73/10 73/13
plausible [6]  23/17 25/19 31/16 33/1 38/1 43/4
plausibly [5]  7/24 36/1 36/10 39/13 74/2
played [4]  6/3 41/5 51/18 67/24
plays [1]  58/2
plead [34]  11/22

12/10 12/12 12/18 15/9 15/13 26/23 27/18 27/22 30/13 31/15 31/16 31/18 32/2 33/25 36/17 36/20 37/4 37/6 37/10 40/17 40/21 40/22 41/18 42/5 44/21 52/8 67/7 69/6 69/7 72/15 74/23 76/16 76/23
pleading [9]  11/14 21/3 31/14 31/24 37/21 48/2 63/9 63/14 65/11
pleadings [1]  46/23
pleads [1]  41/24
please [3]  3/10 12/20 14/6
pled [20]  10/25 12/9 12/11 12/21 13/10 24/3 24/15 24/25 25/5 25/23 25/25 26/20 36/11 37/3 42/1 45/10 45/16 47/12 48/15 74/20
plenty [1]  38/25
podium [2]  3/10 3/25
point [31]  6/12 6/13 12/24 13/4 13/25 14/6 16/6 19/1 19/13 20/14 25/3 25/20 27/19 28/25 29/13 37/19 42/12 43/22 44/6 44/8 45/6 45/8 45/9 48/14 51/3 59/23 66/5 69/1 72/4 72/9 76/21
pointed [4]  14/4 74/25 75/8 75/21
pointing [2]  11/13 45/16
points [2]  30/5 77/12
policy [1]  25/15
political [1]  56/20
port [1]  60/25
portion [2]  57/8 60/7
portions [2]  70/10 77/4
ports [1]  61/24
position [2]  33/8 60/3
possession [2]  48/11 48/12
possible [1]  75/20
power [2]  49/1 53/6
powers [3]  53/5 53/9 76/4
preceded [1]  6/9
preceding [1]  21/17
predicate [1]  37/17
preferable [2]  77/1 77/11
prejudice [4]  35/14 76/15 76/22 78/8

**P**

premised [1]   33/21
prepared [2]   13/9
54/5
preponderance [1]
63/6
prescribes [2]
66/20 66/21
present [5]   56/4
64/14 73/21 73/23
74/2
presentation [1]
58/11
preserve [1]   71/24
President [1]   21/22
press [13]   6/8 6/8
6/9 20/8 20/11
20/16 21/15 22/2
22/4 22/7 39/22
39/24 68/11
presumed [1]   64/8
pretty [7]   8/3 8/4
8/5 9/2 12/22 45/10
45/14
previously [2]   21/9
66/23
prices [1]   52/15
pricing [1]   68/19
primarily [1]   59/10
primary [1]   40/9
prime [2]   16/18
16/24
principal [6]   25/11
30/23 39/6 40/9
41/23 71/20
principals [1]
38/16
probably [2]   52/2
65/25
procedure [4]   30/7
62/13 62/15 63/15
proceeding [3]
35/22 35/22 37/25
proceedings [4]
37/15 54/1 79/21
80/5
proceeds [2]   7/18
58/22
process [1]   66/5
PRODUCT [4]   1/6
1/16 3/4 3/7
production [1]
57/17
products [3]   56/12
57/10 57/18
professionals [1]
36/8
proliferation [1]
58/25
promote [2]   42/19
43/6
proof [10]   11/14
11/16 11/19 12/1
12/3 12/3 45/4 63/5
63/6 63/23
properly [3]   25/23
27/19 72/4
property [82]
proposed [1]   78/25

proposition [2]
23/23 75/14
protect [1]   53/11
prove [1]   41/20
provide [11]   8/12
10/17 16/22 30/14
34/12 35/14 58/20
68/2 68/5 71/8
76/16
provided [11]   8/11
10/17 21/12 34/12
41/7 58/4 67/16
67/21 68/17 69/2
69/25
provides [16]   4/7
4/20 6/15 16/1
26/25 32/4 38/14
46/16 46/19 47/13
47/15 48/12 55/15
55/21 69/2 70/25
providing [20]   7/10
12/14 17/2 17/21
18/5 25/11 34/2
34/24 36/25 39/5
41/22 52/19 58/6
62/7 66/19 66/21
69/10 70/7 71/6
73/25
provision [39]   4/7
5/13 7/5 7/7 9/6
9/19 10/1 10/2 10/2
10/3 11/6 11/6
11/13 11/16 12/3
17/18 19/18 23/3
24/15 26/2 30/18
33/21 35/2 42/6
42/12 42/14 42/15
44/24 48/21 49/4
49/17 50/15 67/8
67/15 68/6 69/22
72/18 73/2 77/21
provisions [13]   9/2
9/2 9/6 9/24 24/14
27/11 33/12 33/22
44/22 45/1 74/5
74/6 74/25
proxies [2]   6/2
57/20
pulled [1]   59/21
purchase [1]   61/10
purchased [1]   60/22
purportedly [1]
60/25
purpose [3]   8/11
10/16 58/9
purposes [10]   7/18
30/17 34/8 34/12
56/4 56/6 70/7 71/1
73/17 75/1
pursuant [9]   22/1
22/5 22/11 34/22
54/10 56/23 62/8
62/11 76/3
pursue [1]   41/20
put [2]   31/19 46/12
putting [1]   32/17

**Q**

Qaeda [1]   39/19
Qassem [1]   57/9

QF [18]   8/10 8/12
10/18 28/3 28/9
30/15 34/13 38/22
39/16 40/10 41/1
41/6 41/14 43/7
46/18 47/14 47/20
51/19
QF's [2]   41/7 42/23
Qods [61]   5/14 5/16
5/17 6/1 6/4 6/16
14/8 14/20 15/14
16/1 21/7 21/8
21/10 21/13 23/13
25/18 28/3 32/5
39/7 47/24 49/22
52/19 52/21 52/22
53/1 53/2 56/16
56/21 56/23 57/1
57/3 57/8 57/10
57/14 57/19 57/23
58/3 58/4 58/6 58/7
58/16 58/21 65/4
66/20 67/4 67/9
67/15 67/17 67/23
67/25 68/7 68/10
68/12 68/17 68/22
69/8 69/11 71/1
71/5 71/8 74/1
qualify [2]   27/4
64/19
Quatirji [1]   68/21
quickly [2]   26/9
75/9
quite [2]   18/18
74/14
quotation [1]   58/12
quotations [1]
58/14
quote [4]   27/18
59/13 63/10 67/7
quotes [2]   20/15
20/17
quoting [3]   15/3
24/10 58/24

**R**

raise [7]   43/21
43/23 46/22 46/25
74/12 74/14 78/14
raised [7]   33/7
40/15 44/17 44/18
44/25 71/24 77/24
raises [1]   42/4
RANDOLPH [1]   1/24
range [1]   58/23
rather [6]   13/3
13/5 40/21 73/22
74/19 78/2
Re [1]   53/12
reach [1]   71/18
reached [2]   60/19
66/6
reaches [1]   9/19
read [8]   6/21 7/13
7/13 19/17 26/9
27/16 70/15 74/2
reading [23]   8/17
8/18 9/19 13/1
14/10 14/23 18/25
19/2 19/15 20/6

21/21 21/24 25/19
43/5 43/9 67/10
69/12 70/4 70/9
70/18 70/19 77/19
77/20
reads [1]   70/13
real [2]   9/22 52/7
really [7]   12/8
24/24 28/18 40/5
49/6 50/15 75/10
reason [3]   8/3 29/3
76/14
reasonable [11]
11/25 14/24 19/14
25/10 25/14 25/19
25/20 52/1 62/22
63/4 63/21
reasoning [2]   42/20
54/8
reasons [4]   5/3
73/1 73/12 75/5
rebels [1]   17/22
rebuttal [1]   29/15
recently [1]   39/23
Recess [1]   53/25
recognized [1]
31/13
record [5]   3/11
3/18 3/20 78/18
80/5
redressed [2]   65/24
66/14
refer [4]   32/9 51/9
59/4 60/14
reference [7]   5/23
41/10 48/19 68/3
68/5 71/3 71/11
referenced [1]
63/16
referring [1]   58/13
refers [6]   14/5
27/11 32/21 32/24
72/7 73/21
refining [1]   57/17
reflect [1]   13/8
regarding [3]   30/11
35/8 38/4
regardless [3]
28/24 73/7 73/16
regime [6]   21/6
39/18 51/15 57/13
68/14 68/21
regime's [1]   59/11
regulate [1]   53/9
regulating [1]   38/6
reject [1]   74/10
relate [1]   12/2
related [1]   11/16
relates [5]   18/16
18/17 22/17 23/9
48/15
relating [2]   54/12
67/14
relatively [1]
75/17
release [6]   21/15
22/3 22/4 22/7 59/7
68/11
releases [8]   6/8
6/9 6/9 20/8 20/11

**R**

releases... [3]
20/16 39/22 39/25
relevant [1]   64/19
relies [2]   71/20
72/17
rely [2]   75/22
77/13
relying [2]   37/11
77/18
rem [5]   36/18 54/10
62/11 62/18 62/21
remain [1]   61/23
repainted [1]   59/18
replay [1]   77/25
replead [5]   35/15
35/17 36/3 72/2
77/3
repleading [1]
77/10
replete [1]   38/4
replied [1]   46/1
reply [6]   35/11
43/16 45/24 46/4
47/1 72/11
reply brief [1]
46/4
report [3]   5/24 6/5
57/21
reporter [5]   2/22
2/23 17/16 26/9
80/3
reporting [1]   22/4
reports [7]   5/22
6/7 20/7 58/14 71/3
75/9 75/10
Republic [1]   60/17
require [4]   9/3
42/15 62/17 70/11
required [9]   11/21
12/10 36/17 36/20
37/4 37/9 37/10
38/12 52/16
requirement [6]
11/14 34/16 37/20
42/4 73/20 76/17
requirements [2]
12/2 62/18
requires [1]   12/9
resident [1]   76/8
residents [7]   14/14
26/6 54/16 55/1
69/16 69/23 70/1
resolving [1]   56/6
resources [7]   8/12
10/17 34/13 55/16
66/21 67/8 67/11
respect [12]   4/8
6/5 23/18 27/22
40/13 42/4 65/6
68/6 71/22 76/17
77/18 77/21
respond [1]   79/3
responded [2]   45/25
46/1
responding [1]
12/21
response [7]   19/2
34/5 46/4 46/5

73/19 78/15 78/20
responsible [4]
18/4 41/3 57/17
58/1
responsive [1]
63/14
rest [1]   75/25
results [1]   55/19
resumed [1]   54/1
retained [1]   66/8
retaliate [8]   17/13
24/2 24/8 42/9
42/24 55/11 64/22
65/9
revenue [8]   6/4
21/7 41/6 51/14
51/19 57/14 58/3
67/25
review [1]   75/19
Revolutionary [1]
56/15
right [26]   7/23
8/17 10/1 10/12
10/19 11/18 16/20
17/13 18/23 20/6
20/15 20/19 21/18
22/9 26/19 35/20
44/3 44/16 44/23
45/8 47/16 47/22
47/25 48/11 52/2
52/6
rights [1]   59/2
rise [2]   18/21
31/20
role [14]   5/21 6/3
38/9 38/17 39/5
39/22 40/1 41/5
41/13 51/18 57/9
58/2 67/24 68/10
Room [1]   2/24
Rostam [2]   21/8
57/3
Rule [13]   11/23
11/24 11/24 22/18
31/17 31/24 36/17
62/8 62/9 62/17
63/15 64/7 64/11
rules [7]   37/5 42/2
62/12 62/13 62/15
62/16 63/14
ruling [6]   25/6
53/22 53/24 54/5
54/6 66/14
run [1]   76/4
Russian [1]   17/23

**S**

safe [1]   39/20
sale [12]   8/11
10/16 14/22 34/12
56/9 58/20 60/24
61/9 61/12 66/10
66/11 75/11
sales [5]   7/18 38/4
39/16 52/4 71/8
same [5]   25/17
27/11 37/20 54/8
61/21
sanctioned [1]
56/10

satellite [1]   59/20
SATIN [9]   2/7 3/17
42/3 43/15 69/23
70/23 73/19 77/12
78/13
Satin's [2]   32/16
34/6
satisfies [1]   55/7
satisfy [1]   34/17
saying [6]   6/14
17/6 20/25 30/21
43/19 47/8
scheme [5]   11/5
21/7 33/9 34/18
57/14
scope [3]   22/22
45/24 49/1
sealed [1]   53/12
seated [1]   3/21
second [17]   4/19
11/9 14/19 17/14
24/24 25/8 25/24
26/15 26/18 31/5
36/23 44/24 45/15
46/1 76/7 77/17
78/2
Secretary [1]   59/8
section [21]   6/21
27/11 54/15 54/22
55/14 56/3 63/8
63/23 64/4 64/24
65/3 65/6 66/19
66/20 66/24 69/4
70/12 72/18 73/6
74/16 75/2
sectors [2]   58/23
59/10
securities [1]
53/18
security [4]   53/5
53/11 56/8 76/4
seek [1]   29/25
seeking [2]   54/11
61/20
seem [1]   9/18
seems [6]   7/11
18/20 25/18 34/6
52/1 76/5
seize [1]   7/6
seized [6]   10/15
35/16 48/4 48/4
71/14 74/3
seizure [13]   9/12
12/15 18/22 21/18
28/9 29/8 35/18
35/20 35/23 61/15
62/24 71/12 79/19
sell [3]   32/3 40/25
57/6
selling [2]   58/10
75/15
sells [1]   14/22
senior [1]   68/22
sense [3]   23/13
46/15 47/11
sentence [4]   34/10
34/10 34/21 35/4
separate [5]   4/7
17/19 31/13 33/21
35/21

separately [1]
37/14
September [1]   39/21
served [2]   21/9
57/4
services [3]   21/13
67/12 67/23
set [6]   8/6 8/14
37/14 37/15 60/25
78/9
seven [1]   21/17
shall [4]   10/7
55/17 55/19 72/24
shepherd [1]   7/4
shifted [1]   4/22
shifting [2]   6/12
25/8
shifts [1]   72/12
ship [8]   28/6 58/8
60/1 60/1 60/8 60/8
66/9 66/9
ship's [1]   60/3
ship-to-ship [3]
60/1 60/8 66/9
shipment [2]   57/9
68/22
shipments [2]   67/19
68/19
shipping [1]   57/5
ships [2]   61/23
62/5
short [1]   5/4
shorthand [1]   31/5
shorthands [1]
30/25
shortly [1]   53/24
show [2]   40/24
65/22
showing [3]   12/18
65/19 70/5
shows [1]   20/16
signed [1]   61/4
significant [5]   6/3
41/5 51/18 58/2
67/24
silent [3]   23/5
23/6 23/9
similar [2]   53/14
60/4
simply [5]   12/13
15/10 69/1 69/9
76/19
single [2]   4/6 4/9
slightly [1]   31/22
slower [4]   17/15
17/16 24/9 24/9
Sohar [1]   61/1
sold [8]   4/10 8/9
52/14 57/20 58/18
62/6 68/15 70/6
Soleimani's [2]
57/9 57/11
someone [4]   25/11
34/1 47/20 64/18
somewhat [1]   19/25
somewhere [2]   31/25
75/20
sorry [13]   11/9
14/6 17/17 21/25
24/10 26/11 36/23

**S**

sorry... [6]    36/24 44/7 59/9 59/16 63/19 71/13
sort [2]    19/25 26/1
sought [4]    8/24 10/14 45/18 46/6
sounds [2]    22/20 23/10
source [46]    4/19 4/21 4/24 4/24 25/9 25/24 26/16 26/22 26/25 27/20 27/23 27/23 28/2 28/6 28/14 29/4 29/7 29/24 29/25 30/1 30/5 30/15 31/2 32/4 33/5 34/3 35/8 35/11 36/8 37/24 40/13 40/25 41/15 41/23 45/7 46/16 46/19 47/13 47/15 48/12 54/19 55/5 64/18 71/15 71/23 77/14
sources [4]    25/12 38/3 51/14 59/10
speak [2]    8/16 17/16
specializes [1]    56/21
specially [1]    59/17
specific [5]    5/1 8/15 13/11 41/1 45/9
specifically [4]    8/7 12/20 32/21 45/7
specify [1]    79/5
speculative [1]    65/23
sped [1]    26/12
speech [1]    26/13
spelled [1]    35/1
spent [1]    50/12
sponsored [2]    21/11 67/21
spring [2]    58/16 68/11
stage [1]    63/9
stamp [1]    60/4
standard [5]    12/12 31/18 31/23 31/24 65/11
standards [1]    21/3
standing [6]    64/5 65/15 65/17 65/19 66/2 66/4
Stark [6]    18/15 50/16 59/15 59/18 59/21 59/24
starting [1]    3/11
state [15]    3/10 4/4 11/24 14/20 18/1 30/4 44/2 44/15 45/24 56/24 62/20 62/23 63/3 63/10 63/21
stated [2]    45/12

45/14
stateless [1]    76/7
statement [2]    49/6 63/12
statements [1]    21/20
states [102]
States or [1]    26/6
statute [42]    8/16 8/17 8/18 10/3 11/17 12/8 12/13 13/14 15/1 18/25 19/2 19/4 20/6 20/19 22/22 23/1 30/3 30/20 33/14 34/13 37/14 37/25 44/19 50/2 52/20 53/14 53/15 54/11 55/15 55/21 62/12 63/1 64/24 69/12 69/12 70/4 70/9 70/10 70/20 72/19 77/19 77/20
statutes [1]    64/23
stay [2]    3/25 35/17
still [8]    12/7 20/6 20/20 22/1 44/4 44/8 46/10 47/2
still have [1]    44/4
stopped [1]    34/10
strange [1]    49/6
Street [2]    2/3 2/8
stress [1]    72/11
stretch [1]    38/8
strike [1]    70/24
structure [1]    31/13
sub [1]    33/25
subject [21]    7/2 7/8 8/4 9/15 10/18 12/15 34/21 36/18 37/12 38/23 39/2 50/8 53/3 55/8 62/12 62/20 63/7 69/16 73/15 74/19 76/19
subject-matter [5]    36/18 37/12 62/20 74/19 76/19
submit [1]    78/25
submitted [1]    57/21
subsection [2]    24/17 52/22
subsidiary [2]    41/3 57/25
substance [1]    77/11
substantial [14]    10/1 10/8 11/1 11/4 11/7 12/4 12/18 18/2 22/19 52/5 72/12 72/15 72/24 74/11
sufficient [12]    7/24 31/16 38/1 44/16 52/24 52/25 69/24 70/25 71/20 71/22 73/24 78/10
sufficiently [9]    11/25 20/21 36/11 38/18 44/20 63/3 63/21 71/4 71/5

suggest [2]    40/7 43/4
suggesting [1]    48/5
suggestion [1]    42/23
suit [1]    72/18
summarizing [1]    30/25
summary [3]    11/20 20/13 35/8
sun [1]    44/13
supplement [2]    52/16 63/15
supplemental [10]    11/23 31/17 36/17 37/5 62/9 62/12 62/13 62/16 62/17 63/15
supplying [1]    57/20
support [64]    5/14 6/16 7/1 7/8 7/10 11/25 12/14 15/23 16/1 16/22 17/22 18/5 21/12 21/13 23/4 24/16 25/1 34/25 36/10 36/12 37/1 38/1 39/6 39/12 39/13 40/23 40/23 41/19 41/22 42/6 48/21 49/4 49/17 49/21 55/15 58/6 58/23 59/1 63/3 63/21 65/4 66/19 66/21 67/8 67/11 67/15 67/22 67/23 68/7 68/25 69/2 69/8 69/10 69/22 69/25 70/7 71/1 71/7 71/9 72/14 72/17 73/18 74/1 77/22
supported [1]    40/5
supporting [4]    49/25 51/12 57/23 59/5
supposed [2]    28/4 28/5
sure [11]    8/22 9/25 11/10 22/16 27/5 30/10 32/12 37/12 37/22 66/1 79/17
surreply [1]    45/18
swaths [1]    40/6
sweeping [1]    7/11
Syria [2]    39/18 68/19
Syrian [1]    68/21
system [2]    56/20 60/3

**T**

table [2]    3/13 3/21
talk [7]    7/20 23/7 39/15 51/17 51/17 78/20 78/24
talked [4]    22/19 44/23 52/18 76/2
talking [5]    38/16 49/14 50/13 51/13 75/15

talks [3]    6/2 52/11 53/16
tangible [2]    62/23 67/12
Tanker [1]    56/15
tankers [2]    36/13 58/20
targeted [1]    38/22
targeting [1]    51/12
targets [3]    16/18 16/24 59/5
technical [1]    67/22
technological [1]    21/12
teed [1]    72/4
telling [1]    25/6
tells [1]    13/5
tenable [1]    70/19
tense [5]    19/4 73/21 73/23 73/23 74/2
term [6]    32/24 55/8 55/19 55/20 56/1 67/11
terminal [1]    56/13
terminate [1]    36/4
terms [1]    24/25
terribly [1]    75/14
terror [1]    33/9
terrorism [72]    4/12 4/16 5/8 5/11 5/12 7/1 7/10 7/18 9/13 9/20 10/23 11/5 13/14 13/18 14/13 14/21 15/6 15/14 15/16 15/21 15/21 16/2 16/21 17/10 17/20 19/6 19/12 20/9 20/17 20/22 20/23 23/15 24/4 24/11 24/21 26/5 29/23 30/13 33/17 33/22 33/24 33/25 34/8 34/24 35/3 39/9 42/5 42/23 44/21 44/25 45/4 48/22 49/3 49/22 49/24 52/20 54/14 54/25 55/9 56/1 59/1 64/17 64/19 67/3 69/15 69/21 71/2 71/6 71/17 73/11 73/14 77/22
terrorist [35]    6/1 9/12 12/15 14/12 14/20 16/17 16/19 17/25 18/6 18/13 21/10 23/14 25/12 32/3 34/25 41/16 43/7 55/16 55/23 55/24 56/1 56/2 56/25 57/20 59/11 66/22 66/25 67/1 67/5 69/2 69/3 69/8 70/7 71/9 73/18
that's who [1]    46/20
the jurisdiction [1]    50/8
theories [9]    4/7

**T**

theories... [8]   5/2
26/1 29/21 31/15
35/1 40/21 45/2
54/22
theory [59]   4/9
4/19 4/20 4/21 4/24
4/25 5/6 6/13 8/5
8/14 10/4 10/19
10/22 10/24 11/12
12/23 13/9 13/10
14/18 14/19 15/18
17/3 19/24 20/1
22/18 25/9 25/24
27/23 27/24 28/14
30/1 30/8 30/10
33/13 33/20 33/25
34/1 34/7 35/4
37/11 40/13 40/14
40/18 41/17 41/25
42/1 45/15 46/1
50/22 54/23 71/19
71/20 71/23 72/3
72/6 72/20 73/3
77/14 77/15
there has [1]   44/20
therefore [5]   10/18
34/21 43/22 66/13
73/14
therein [3]   43/1
43/11 51/1
thereof [1]   69/23
thereon [1]   38/3
think it's [1]   47/2
thinking [1]   13/9
third [3]   34/10
48/7 76/8
though [4]   37/20
47/8 48/2 50/11
thought [3]   6/13
15/2 48/5
three [2]   31/5
61/17
throughout [1]
51/15
throw [1]   12/16
thrust [1]   45/11
thus [1]   39/9
tie [1]   74/8
ties [1]   57/2
timing [4]   29/5
29/6 78/15 78/19
TIMOTHY [2]   2/7
3/18
tissue [1]   52/19
tissues [1]   49/15
title [6]   55/17
60/18 61/6 62/4
66/8 74/7
today [9]   3/13 7/21
9/11 70/21 71/18
77/12 78/24 79/6
79/18
together [1]   58/18
toilet [1]   49/16
told [1]   18/25
track [1]   54/7
tracks [1]   30/19
trading [1]   60/16

trafficking [2]   9/5
53/15
transaction [3]
9/22 48/8 49/15
transactions [1]
60/5
transcript [2]   1/24
80/4
transfer [11]   16/4
18/12 18/14 18/15
29/9 50/18 50/18
60/1 60/8 61/13
66/10
transferred [4]
56/13 59/24 60/6
61/7
transferring [3]
8/10 10/16 34/11
transmits [1]   60/3
transport [1]   68/13
transportation [3]
41/4 56/9 58/1
transported [1]
58/17
Treasury [5]   18/1
57/21 59/4 59/7
59/8
Treasury's [2]
51/11 56/17
trial [5]   11/20
12/2 41/21 63/5
63/23
tried [2]   12/17
41/8
true [8]   12/17
13/23 29/5 46/25
56/5 56/7 64/8 80/4
trumped [1]   32/20
try [2]   27/25 39/25
trying [2]   43/2
46/11
Turkey [1]   60/17
Turkish [1]   61/11
turn [7]   16/6 39/9
65/13 66/15 73/3
76/5 77/8
turned [1]   19/10
turning [1]   64/15
two [23]   4/3 4/7
5/2 11/11 15/11
18/9 24/4 24/12
24/14 24/21 26/1
29/21 29/23 35/16
36/12 39/23 49/14
51/24 54/10 54/12
55/7 74/25 78/7
Twombly [2]   31/23
32/1
type [1]   32/7
typical [1]   31/23

**U**

U.S [19]   2/23 3/13
3/14 7/21 16/13
16/23 17/13 23/1
38/22 38/24 39/2
40/2 40/10 42/24
49/11 49/11 53/3
62/6 75/8
U.S.C [9]   4/6 8/13

37/16 37/16 38/13
54/11 55/14 63/8
64/24
ultimately [3]   8/8
41/20 63/5
unclear [1]   27/25
unconventional [1]
56/22
under [26]   4/6 4/9
8/6 13/14 31/17
33/18 35/17 36/16
37/25 42/1 42/4
47/5 52/21 54/22
55/14 55/17 56/2
63/1 63/19 63/23
64/7 71/12 71/13
72/19 75/24 76/17
underlying [1]
36/25
undermine [1]   79/19
understood [1]
51/23
unidentified [1]
46/14
UNITED [98]
unlawful [1]   53/1
unless [2]   5/1
32/15
unnamed [4]   27/20
29/2 29/7 46/14
unpled [1]   29/2
unquote [1]   27/18
unwieldy [1]   41/11
up [7]   9/24 17/9
26/12 30/24 31/4
55/4 72/4
USAO [1]   2/3
use [10]   15/15
33/15 39/15 41/7
58/4 59/12 64/2
67/17 73/4 74/2
used [22]   6/3 7/4
9/3 9/4 9/16 10/5
20/2 21/5 27/13
33/23 33/24 34/7
41/6 51/19 57/12
67/17 67/24 69/7
72/21 73/8 73/17
74/4
uses [3]   27/10
58/21 73/20
using [2]   7/17
73/22
usual [1]   47/5
utilizes [1]   58/7

**V**

variety [1]   59/1
various [4]   5/3
5/22 56/10 75/9
venue [1]   62/21
verified [2]   54/9
62/19
vessel [3]   59/15
59/19 61/8
vessels [7]   41/7
57/6 58/4 58/9
61/20 67/17 68/13
via [1]   60/1
view [4]   18/20

28/20 30/16 70/15
views [2]   7/21
23/10
violate [3]   55/21
64/23 66/24
violated [2]   65/2
66/18
violating [1]   50/2
violation [10]   8/12
30/23 34/13 42/6
55/12 55/14 65/6
69/4 72/17 74/18
violence [1]   59/12

**W**

waiting [1]   18/24
waived [1]   45/21
Wales [1]   61/19
wants [2]   74/8
77/13
warfare [1]   56/22
warrant [1]   35/23
warrants [1]   61/14
was going [1]   27/12
washed [1]   19/11
Washington [4]   1/12
2/4 2/9 2/25
way [9]   4/23 13/9
21/14 25/17 45/10
47/12 50/4 70/12
74/14
weapons [1]   58/25
weeks [3]   35/16
39/24 59/21
weird [1]   12/16
weren't [2]   40/15
45/6
what's [2]   16/8
64/6
whatsoever [1]   7/7
who's [1]   10/23
whole [3]   14/18
14/19 76/10
wholesale [1]   61/11
wholesaler [2]
66/11 66/12
wholly [5]   23/4
49/3 49/14 50/18
75/7
whose [1]   56/19
willing [1]   19/9
within [8]   20/8
20/20 33/3 39/23
45/24 49/14 52/20
76/10
without [6]   35/14
62/6 63/12 76/15
76/22 78/8
woefully [1]   5/3
word [6]   6/22 7/25
27/10 27/14 47/6
72/7
words [2]   10/19
20/10
worked [3]   68/16
68/18 68/21
world [1]   49/24
worldwide [1]   50/14
write [3]   16/14
17/24 49/8

| | | | |
|---|---|---|---|
| **W** | | | |
| **writing [2]**  16/15 17/1 **written [1]**  70/13 **wrong [8]**  6/20 8/18 8/19 13/2 13/5 27/16 46/21 50/7 **wrongdoers [4]**  39/6 40/9 40/9 41/23 **wrote [1]**  16/10 | | | |
| **Y** | | | |
| **year [1]**  29/9 **years [4]**  21/17 55/18 55/20 55/20 **Yep [1]**  42/11 **you're doing [1]** 50/4 | | | |